**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UBER TECHNOLOGIES, INC.<br><br>                Plaintiff,<br><br>   v.<br><br>KEVIN BODDIE,<br><br>                Defendant,<br>   and<br><br>THE COMMONWEALTH OF<br>PENNSYLVANIA, HUMAN RELATIONS<br>COMMISSION,<br><br>                Defendant-Intervenor. | Case No. 2:23-cv-03780-GEKP |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THE**
**COMMONWEALTH OF PENNSYLVANIA, HUMAN RELATIONS COMMISSION'S**
**RULE 12(b)(6) MOTION TO DISMISS**

## TABLE OF CONTENTS

PAGES

I. INTRODUCTION……………………………………………………..…………1

II. STANDARD OF REVIEW……………………………………………………...…1

III. FACTUAL AND PROCEDURAL BACKGROUND………………………….……………2

IV. ARGUMENT……………………………………………………………………4

    A. Uber's Petition is Baseless in Contract………………………………………5

    B. Uber's Petition is Baseless in Law……………………………………………6

        1. *The FAA Is Inapplicable to Government Investigations by Agencies That Are Not a Party to an Arbitration Contract* ………………………………………6

        2. *The FAA Is Inapplicable to Government Prosecutions on Behalf of the Public by Agencies That Are Not a Party to an Arbitration Contract*…………...……..7

        3. *Uber's Cited Authority is Inapposite*……………..……………………..………………8

    C. Uber's Petition Seeks to Improperly Divest the Commission of Its Statutory Duty to Accept Complaints and Investigate Violations of Pennsylvania Law……....9

    D. Uber's Position that the Question of Arbitrability is for the Arbitrator Lacks Contractual Support in this Matter…………………………………………10

        1. *Uber's Arguments That the Question of Arbitrability is for the Arbitrator are Invalid*…………………………………………………………………11

        2. *Uber's Arguments That Boddie's Individual Claims Are Within the Scope of the Parties' Agreement to Arbitrate are Misleading to this Court*………………………..14

    E. Uber's Allegations that the Class Action Waiver Applies to Boddie's Filing Are Invalid…………………………………………………………………15

    F. The Commission is Entitled to Dismissal of this Case Because Uber is Not Entitled to an Injunction………………………………………………….....15

V. CONCLUSION……………………………………………………………....16

# TABLE OF AUTHORITIES

CASES                                                                                          PAGES

*Phillips v. Cty. of Allegheny*, 515 F.3d 224 (3d Cir. 2008)…………………………………………..1

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)………………………………………………………………1

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009)………………………………………..2

*Doe v. Boyertown Area Sch. Dist*., 10 F. Supp. 3d 637 (E.D. Pa. 2014)…………………………2

*Mayer v. Belichick*, 605 F.3d 223 (3d Cir. 2010)…………………………………………………2

*Green v. Missouri Pac. R. Co.*, 523 F.2d 1290 (8th Cir. 1975)…………………………………...3

*Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86 (1989)………………………………5

*Higgins v. MetLife Inc.*, No. CV 22-3714, 2023 WL 5309893 (E.D. Pa. Aug. 17, 2023)………..5

*Anderson v. Haverford Coll.*, 851 F. Supp. 179 (E.D. Pa. 1994)……………………….....……..6

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)……………..………7, 9, 12, 14, 15

*E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002)…………………….……… 8, 9, 12, 14

*Charter Commc'ns, Inc. v. Derfert*, No. 1:20-CV-915, 2021 WL 949391
     (W.D.N.Y. Mar. 12, 2021)………………………………………………….….…..8

*Preston v. Ferrer*, 552 U.S. 346 (2008)…………………………………………………………...8

*Uber Techs., Inc. v. Blossomgame*, No. 2:20-cv-04842-GRB-JMW, 2021 WL 8317115
     (E.D.N.Y. Oct. 29, 2021)………………………………………………….....………..9

*Com., Pennsylvania Hum. Rels. Comm'n v. Freeport Area Sch. Dist.*, 467 Pa. 522 (Pa. 1976)...10

*Com., Pennsylvania Hum. Rels. Comm'n v. Lansdowne Swim Club*, 515 Pa. 1 (Pa. 1987)……..10

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)……………………………………11

*Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444 (2003)…………………………………………11

*AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986)…..………….....11, 12

*Steelworkers v. American Mfg. Co.*, 363 U.S. 564 (1960)…………………………………………..12

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010)………………………………………...13

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006)……………………………13

*Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400 (E.D.N.Y. 2014)………………………...14

*Singh v. Uber Techs., Inc.*, 67 F.4th 550 (3d Cir. 2023)………………………………………14

*Lazzaroni USA Corp. v. Steiner Foods*, No. Civ. 05-4476, 2006 WL 932345
  (D.N.J. Apr. 11, 2006)………………………………………………………………………...16

*Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469 (E.D. Pa. 2007)…………………………...16

*E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738 (1st Cir. 1996)……………………………………...16

STATUTES

43 P.S. §§951-63, *et. seq.* ………………………………………………………………………1

43 Pa. Stat. § 962(c)…………………………………………………………..……………4, 5, 14

43 Pa. Stat. § 957……………………………………………………………………..…..…6,  10

71 Pa. Stat. § 732-402(6)………………………………………………………………………7

OTHER AUTHORITIES

Federal Rule of Civil Procedure 12(b)(6)………………………………………………………1

16 Pa. Code § 42.31…………………………………………………………………………2

16 Pa. Code § 42.41……………………………………………………………………………2, 7

16 Pa. Code § 42.67(a)……………………………………………………………….....3, 4, 14

16 Pa. Code §§ 42.71……………………………………………...…………………………7

16 Pa. Code §§ 42.72……………………………………………………...…………………7

16 Pa. Code §§ 42.101……………………………………...……………………..……………7

16 Pa. Code § 42.36………………………………………………………………………....10

## I. INTRODUCTION

The Commonwealth of Pennsylvania, Human Relations Commission (the "Commission") seeks to dismiss the above-captioned petition filed by Uber Technologies, Inc. ("Uber") asking this Court to compel Defendant Kevin Boddie ("Boddie") to withdraw his administrative complaint (functionally equivalent to an Equal Employment Opportunity Commission "EEOC" charge) before the Commission and instead address his alleged violations of Pennsylvania law solely via arbitration. This Petition should be dismissed for the reasons given below. Since 1955, the Commission has been tasked by the Pennsylvania legislature to initiate, receive, investigate, and pass upon complaints charging unlawful discrimination under the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. §§951-63, *et. seq.* Uber's Petition seeks to disrupt the Commission's statutory law enforcement mandate to investigate alleged violations of the PHRA, in contravention of Uber's own attached arbitration agreement, and contrary to United States Supreme Court Precedent.

Counsel for the Commission has conferred with counsel to Plaintiff Uber, who indicated that, at this time, Uber does not consent to this motion. Counsel for the Commission has also conferred with Defendant Boddie, who has indicated that Defendant consents to this motion.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts must "accept all factual allegations as true [and] construe the [claim] in the light most favorable to the [nonmoving party]." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d. Cir. 2002) (internal quotations omitted)). Viewing the factual averments in this light, courts must then "determine whether, under any reasonable reading of the complaint, the [nonmoving party] may be entitled to relief." *Id*.

This standard requires Uber's Petition to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (internal quotations omitted). A claim "has facial plausibility when the [nonmoving party] pleads factual content that allows the court to draw the

1

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 679. All facts pled must be taken as true, but any legal conclusions asserted may be disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court must then draw on its judicial experience and common sense to determine whether those factual matters averred are sufficient to show that the nonmoving party has a plausible claim for relief. *Id*. (citing *Iqbal*, 556 U.S. at 679).

"'[C]onclusory' or 'bare-bones allegations' will not survive a motion to dismiss. . . ." *Doe v. Boyertown Area Sch. Dist*., 10 F. Supp. 3d 637, 643 (E.D. Pa. 2014). Further, the Court may consider the Complaint, "exhibits attached to the [Complaint], [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc*., 998 F.2d 1192, 1196 (3d Cir. 1993)). For the reasons discussed below, Uber's Petition fails to allege sufficient facts to plausibly state a claim for relief as a matter of law.

## III. FACTUAL AND PROCEDURAL BACKGROUND

Defendant Boddie initially filed an administrative complaint (effectively the same as an EEOC charge of discrimination)[1] with the Commission against Uber on or around July 16, 2018, alleging disparate treatment employment claims based on age and sex.  In his complaint, Boddie alleges that after working as a Driver for Uber for approximately one- and one-half years, he was terminated after a retroactive background check uncovered one non-violent drug offense dating back 16 years.  On July 22, 2020, after initiating an investigation under 16 Pa. Code § 42.41(a), the PHRC served Uber with a Complaint, PHRC Case No. 201800207, EEOC No. 175202060782,

---

[1] *See* 16 Pa. Code § 42.31 which details requirements of a complaint filed with the Commission and § 42.41(a) which details the requirement that the Commission initiate a neutral, fact-finding investigation subsequent to the filing of a complaint.

dual-filed with the EEOC.  Despite this service, Uber failed to file an answer.  Commission staff erroneously closed the case on March 20, 2022.  The Commission reopened Boddie's case pursuant to 16 Pa. Code § 42.67(a) on January 19, 2023.  On March 30, 2023, Boddie filed a Second Amended Complaint.  Based on the allegations contained in the Second Amended Complaint, the Commission expanded its investigation into a class disparate impact case (Black male and Hispanic male) based on the alleged overly broad nature of Uber's criminal background check procedures.  Such overly broad criminal background check procedures have been scrutinized by courts for nearly 50 years. *See Green v. Missouri Pac. R. Co.*, 523 F.2d 1290, 1296-99 (8th Cir. 1975).  Boddie's Second Amended Complaint alleged an ongoing pattern and practice of discrimination, expressing that Uber was engaging in a continuing violation of the PHRA dating back at least until the date of his initial charge of discrimination.  Uber finally filed an Answer and Position Statement on May 30, 2023.  The Commission issued a Request for Information ("RFI") on Uber on July 18, 2023, to which Uber replied with numerous pages of objections, and no documents and/or data.  The Commission sent a letter to Uber on August 28, 2023, giving it an additional 30 days to respond to the RFI, or until September 28, 2023, before the Commission would seek to compel production of these documents by subpoena.

On September 27, 2023, more than three years after being served with the initial complaint, without informing the Commission, and one day before documents were due to the Commission, Uber filed the current Petition to Compel Arbitration ("Petition"; Doc. ID# 1). Uber petitions this Honorable Court to compel Boddie under the Federal Arbitration Act ("FAA") to withdraw his administrative complaint purportedly based on an arbitration clause he signed with Uber.  Uber filed a memorandum in support of this petition on September 28, 2023. ("Memorandum"; Doc. ID# 3).

As explained further below, Uber's Petition is baseless in both contract and law, and came while Boddie was a *pro se* Complainant before the Commission.  Moreover, Uber's Petition and Memorandum are misleading to this court, because they leave out the fact that filings before agencies such as the Commission are excluded from the arbitration agreement it attaches to its Petition.  In its Petition and Section III.B.2.c of its Memorandum, Uber similarly leaves out additional important facts: 1) that Boddie's "Second Amended Complaint" was an administrative complaint (effectively equivalent of an EEOC Charge) before the Commission that initiated not an adjudicatory process, but a neutral, fact-finding investigation; 2) that the Second Amended Complaint asserted only violations of Pennsylvania law, making the 90-day federal statute of limitations irrelevant; and 3) that the Commission had reopened the administrative investigation around Boddie's charge under 16 Pa. Code § 42.67(a) on January 19, 2023, meaning that the state statute of limitations for filing in court is both irrelevant and has yet to start running in this matter. *See* 43 Pa. Stat. § 962(c)(2) ("A[ private action] under this subsection shall be filed [in court] within two years after the date of notice from the Commission closing the complaint.").

## IV. ARGUMENT

As explained further below, Uber's Petition should be dismissed by this Honorable Court because it seeks to improperly divest the Commission of its statutory authority to initiate, receive, investigate, and pass upon complaints charging unlawful discrimination under the PHRA. Moreover, in seeking to compel arbitration, Uber fails to acknowledge that a filing of a complaint before agencies such as the Commission are excluded from its arbitration agreement.  Thus, this dispute should be dismissed as it is not within the scope of the parties' agreement to arbitrate, as Boddie's Second Amended Complaint is an administrative complaint, which initiated a neutral, fact-finding government investigation into alleged violations of Pennsylvania law.  Consistent with

United States Supreme Court precent, such complaints are explicitly carved out of Uber's arbitration agreement, and not subject to arbitration under the FAA.  United States Supreme Court also compels this Court to decide the question of arbitrability in this matter.

A.      **Uber's Petition is Baseless in Contract**

Uber's Petition is deficient on its face because the attached arbitration contract explicitly exempts "proceedings that must be exhausted under applicable law before pursuing a claim in a court of law or in any forum other than arbitration." (Doc. ID# 1 at 27-28).  The contract additionally clarifies:

> Furthermore, <u>nothing in this Arbitration Provision prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission</u>, U.S. Department of Labor, Securities Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs, and <u>nothing</u> in this Agreement or Arbitration Provision <u>prevents the investigation by a government agency</u> of any report, claim or <u>charge</u> otherwise covered by this Arbitration Provision. <u>**Nothing in this Arbitration Provision shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration**</u>.

(Doc. ID# 1 at 29) (emphasis added).

A Commission investigation of a charge of discrimination filed before it is clearly a "proceeding that must be exhausted . . . before pursuing a claim in a court of law."  Identical in procedure to its federal counterpart, the EEOC, individuals aggrieved under the PHRA are required to file an administrative complaint with the Commission and exhaust their administrative remedies before pursuing claims in a court of law. *Clay v. Advanced Computer Applications, Inc.*, 522 Pa. 86, 92 (1989); *Higgins v. MetLife Inc.*, No. CV 22-3714, 2023 WL 5309893, at *4 (E.D. Pa. Aug. 17, 2023); 43 Pa. Stat. § 962(c).

"In ruling upon a 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case and <u>exhibits attached to the complaint may also be taken into account</u>." *Anderson v. Haverford Coll.*,

851 F. Supp. 179, 180–81 (E.D. Pa. 1994) (citing *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3rd Cir. 1990). Uber has attached this arbitration contract as an exhibit to its Petition, making the Petition facially self-defeating. This requires little discussion. Boddie's administrative complaint with the Commission is flatly and explicitly not covered by the arbitration agreement, and the Petition must be dismissed.

**B.    Uber's Petition is Baseless in Law**

The United States Supreme Court has clearly stated that an administrative filing like Boddie's is not subject to an arbitration agreement under the FAA. The Commission is an administrative agency that has been tasked by the Pennsylvania legislature to perform several functions. Included in these functions are the duties to 1) receive and investigate complaints of discrimination (43 Pa. Stat. § 957(f)), 2) prosecute violations of the PHRA on behalf of complainants and the public (43 Pa. Stat. § 957(c.3)(2)), and 3) adjudicate alleged violations of the PHRA in its administrative forum (43 Pa. Stat. § 957(g)(1)). These three functions are performed separately by the Commission's Enforcement,[2] Legal, and Adjudication units, respectively. As explained below, the United States Supreme Court has treated the enforceability of arbitration agreements under the FAA differently based on what function of the administrative process the party subject to the agreement invokes regarding an administrative employment discrimination charge.

*1.    The FAA Is Inapplicable to Government Investigations by Agencies That Are Not a Party to an Arbitration Contract*

The United States Supreme Court has clearly stated that an arbitration agreement cannot prevent an administrative charge filing. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) ("An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC"). This language, albeit seemingly dictum, does not require much explanation. Boddie has merely filed an administrative charge with the Commission, and *Gilmer*

---

[2] Commission Prosecuting Attorneys and/or Assistant Chief Counsels occasionally provide legal advice to guide the Enforcement unit when such is required during the investigative process.

flatly states that this action cannot be prevented by an arbitration agreement.  As explained above, there is no meaningful factual or functional distinction between the EEOC and the Commission in this instance.  An administrative complaint before the Commission first triggers only a neutral, fact-finding investigation. 16 Pa. Code § 42.41(a).  Like the EEOC, only upon a cause finding and failure of conciliation can the Commission subsequently initiate a prosecution in the public interest. 16 Pa. Code §§ 42.71, 42.72, and 42.101.  Thus, Uber's Petition requesting that this Court enjoin Boddie to withdraw his administrative complaint before the Commission is legally baseless under *Gilmer*.

     2.    *The FAA Is Inapplicable to Government Prosecutions on Behalf of the Public by Agencies That Are Not a Party to an Arbitration Contract*

Assuming arguendo that the Commission initiates a prosecution, its actions would also not be impacted by private party arbitration contracts.  The Commonwealth of Pennsylvania has delegated the authority of independent agencies like the Commission to approve contracts to the agency's Chief Counsel. 71 Pa. Stat. § 732-402(6).  Here, the Commission was not a party to the arbitration agreement at issue, and did not review and approve it.  Therefore, the Commission is not bound by its terms.

Like the EEOC, the Commission, only after its Enforcement unit makes a cause finding and attempts conciliation, can convene a public hearing and prosecute alleged violations of the PHRA. 16 Pa. Code §§ 42.71, 42.101.  Such *prosecution* cannot be prohibited by an arbitration agreement.  A government agency's ability to file a lawsuit and prosecute a violation of employment discrimination law in the public interest, including its ability to obtain victim-specific monetary relief, has been upheld where the party filing a charge, as well as similarly-situated unnamed individuals on whose behalf relief was sought, were subject to an arbitration agreement. *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002).  This may be true even if the agency's prosecution effort is brought in the name of the complainant as opposed to the agency itself. *See Charter Commc'ns, Inc. v. Derfert*, No. 1:20-CV-915, 2021 WL 949391, at *2 (W.D.N.Y. Mar. 12, 2021).

It is clear from the facts of Uber's Petition that this matter has not made it to the post-cause-finding and prosecutorial stage yet. However, even in the event that the Commission decides to prosecute this matter, under the holding of *Waffle House*, Uber has no legal basis to circumvent this prosecution.

3.      *Uber's Cited Authority is Inapposite*

Uber cites *Preston v. Ferrer*, 552 U.S. 346 (2008), as support for its contention that an administrative complaint filed with the Commission is still subject to arbitration. However, *Preston* involved a complaint filed before the California Labor Commission regarding a contract between a television personality and a lawyer. 552 U.S. at 350. It did not involve an employment discrimination matter where a state agency was tasked with first investigating and then prosecuting charges of discrimination on behalf of the public. As the *Charter* Court noted, "[t]he *Preston* Court distinguished *Waffle House*, noting that under the relevant provision of the [California Talent Agencies Act], 'the Labor Commissioner functions not as an advocate advancing a cause before a tribunal authorized to find the facts and apply the law; instead, the Commissioner serves as an impartial arbiter.'" *Charter*, 510 F. Supp. 3d at 15 (quoting *Preston*, 552 U.S. at 359). Here, like the EEOC in *Waffle House*, the Commission functions first as a neutral, fact-finding investigator regarding alleged violations of the PHRA, followed by functioning as a prosecutorial advocate advancing a cause on behalf of the public interest. Therefore, *Preston* is clearly inapplicable. The Commission's role as impartial arbiter, as performed by its Adjudications unit, has not yet been triggered in the instant matter. Even if it were to be triggered, the Commission would have the authority to prosecute any violations of the PHRA under the precedent of *Waffle House* and the persuasive authority of *Charter*.

Conveniently, Uber does not cite to *Charter*. Instead, it cites *Uber Techs., Inc. v. Blossomgame*, No. 2:20-cv-04842-GRB-JMW, 2021 WL 8317115, at *5 (E.D.N.Y. Oct. 29, 2021), as an example of when a Court compelled arbitration of a discrimination claim pending before the New York State Division on Human Rights ("NYSDHR"). However, Uber litigated

*Blossomgame* against a *pro se* individual defendant,[3] without any attempt from the NYSDHR to formally intervene in that matter.[4]  The defendant in *Blossomgame* was understandably unprepared to oppose Uber's Petition to Compel Arbitration and Motion for Summary Judgment in that matter, as he replied to its Motion for Summary Judgment with a three-page letter that did not cite any relevant caselaw or make any cogent legal arguments.  Essentially, the proper arguments and legal citations were never put before the *Blossomgame* court, and the resulting opinion does not discuss *Gilmer*, *Waffle House*, *Charter*, or any of the various arguments contained herein.  Therefore, *Blossomgame*, issued as a slip opinion, carries little to no persuasive or jurisprudential value.

The remainder of the cases Uber cites in support of its statement that "[c]ountless courts across the nation have enforced it and similar versions of [its arbitration] agreement" involve individual plaintiffs bringing claims in a court of law—not employees filing a charge of unlawful discrimination before an administrative agency, where the agency has the statutory authority to thereafter prosecute the case in the public interest.  Therefore, all of Uber's remaining case citations are inapposite to its current Petition and Memorandum, as the citations do not fall under the ambit of *Gilmer* or *Waffle House*.

**C.  Uber's Petition Seeks to Improperly Divest the Commission of Its Statutory Duty to Accept Complaints and Investigate Violations of Pennsylvania Law**

Uber's Petition seeks to improperly divest the Commission of its statutory duty to accept complaints and investigate violations of the PHRA.  The Pennsylvania legislature has expressly granted the Commission the authority to do so.  *See* 43 Pa. Stat. § 957.  Were employers able to evade PHRA investigations and enforcement by restricting employees' abilities to file complaints with the Commission, it would thwart the Commission's ability to interpret the PHRA and protect

---

[3] Blossomgame was initially represented by counsel for a short period, but ultimately opposed Uber's Motion for Summary Judgment with a *pro se*, three-page letter to the Court. Letter from *pro se* respondent Arthur Blossomgame titled "Request Uber Technologies not to proceed with arbitration," Doc. Id. #48, *Uber Technologies, Inc. v. Blossomgame*, No. 2:20-cv-04842-GRB-JMW (E.D.N.Y. Oct. 29, 2021).

[4] Earlier in the case, the NYSDHR did send a letter to the court, citing *Charter* and *Waffle House*, but made no attempt to intervene or participate in summary judgment briefing. Letter by NYS Div. of Human Rights, Doc. Id. #27, *Uber Technologies, Inc. v. Blossomgame*, No. 2:20-cv-04842-GRB-JMW (E.D.N.Y. Oct. 29, 2021).

the public interest. Furthermore, and perhaps more alarmingly, granting Uber's petition would force *pro se* filers with the Commission into an arbitration forum where they would receive no assistance in investigating their alleged violations of law, or in vindicating their rights thereafter. Such a holding would create a chilling effect on Pennsylvania citizens considering filing a complaint with the Commission. Moreover, such a holding would interfere with the Commission's ability to investigate systemic discrimination within the Commonwealth, which the Commission clearly has the authority to do. *See Com., Pennsylvania Hum. Rels. Comm'n v. Freeport Area Sch. Dist.*, 467 Pa. 522, 530 (Pa. 1976) (citing *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 414 n. 8 (1975)); 16 Pa. Code § 42.36. The Commission would be thwarted in proceeding with an investigation into acts of discrimination not only against a Complainant, but also against similarly situated individuals, if such an investigation could be cut short at the outset by an arbitration agreement. The Commission would also be deprived of a key witness—the Complainant—in the furtherance of its investigations. In summary, granting Uber's Petition would almost single-handedly dismantle the Commission's authority to investigate alleged violations of the PHRA and vindicate the rights of Complainants and others in the public interest.

**D.** **Uber's Position that the Question of Arbitrability is for the Arbitrator Lacks Contractual Support in this Matter**

The Pennsylvania Supreme Court has held "the Commission's jurisdiction is to be resolved initially by the Commission during an investigation authorized under the Act." *Com., Pennsylvania Hum. Rels. Comm'n v. Lansdowne Swim Club*, 515 Pa. 1, 3 (Pa. 1987).[5] Uber's current Petition is an attempt to interfere with this jurisdiction and subvert a government investigation into alleged violations of Pennsylvania law. An arbitration agreement that the Commonwealth of Pennsylvania was not a party to cannot interfere with this jurisdiction. Nevertheless, even the language of the arbitration agreement does not convey jurisdiction over the question of arbitrability to an arbitrator.

---

[5] This is similar to Title VII's grant of authority to the EEOC over its choice of forum to bring an enforcement action once a charge has been filed. *Waffle House*, 534 U.S. at 298 (holding that the FAA does not supersede a statutory grant of authority to an anti-discrimination agency to determine its choice of venue).

1.      *Uber's Arguments That the Question of Arbitrability is for the Arbitrator are Invalid*

Uber argues in Section III.B.2.a of its Memorandum that the question of arbitrability in this matter is for an arbitrator to decide.  This is contrary to United States Supreme Court precedent as applied to the facts of this matter.  "The question whether the parties have submitted a particular dispute to arbitration, *i.e.*, the '*question of arbitrability*,' is 'an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise.'" *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (quoting *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643, 649 (1986)) (emphasis in *Howsam*).  Furthermore:

> a disagreement about whether an arbitration clause in a concededly binding contract applies to a particular type of controversy is for the court. See, *e.g.*, *AT&T Technologies*, *supra*, at 651-652, 106 S.Ct. 1415 (holding that a court should decide whether a labor-management layoff controversy falls within the arbitration clause of a collective-bargaining agreement); *Atkinson v. Sinclair Refining Co.*, 370 U.S. 238, 241-243, 82 S.Ct. 1318, 8 L.Ed.2d 462 (1962) (holding that a court should decide whether a clause providing for arbitration of various "grievances" covers claims for damages for breach of a no-strike agreement).

*Howsam*, 537 U.S. at 84; *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452 (2003) (courts are assumed to decide "certain gateway matters, such as . . . whether a concededly binding arbitration clause applies to a certain type of controversy").

Here, the question of whether a Commission administrative complaint is arbitrable turns on whether the arbitration clause applies to a *particular type* of controversy, as in *AT&T*.  In *AT&T*, a court was asked to decide the arbitrability of whether management could lay off a number of employees where Section 8 of a collective bargaining agreement provided for arbitration of differences arising over interpretation of the agreement. 475 U.S. at 644-45.  Section 9 of the same agreement stated that management was "free to exercise certain management functions, including . . . termination of employees." *Id*. at 645.  Article 20 nevertheless proscribed some details about the order in which employees would be laid off. *Id*.  The United States Supreme Court analyzed the case based on three pre-established Supreme Court principles, the first being that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Id*. at 648 (citing *Steelworkers v. Warrior & Gulf Navigation Co.*,

11

363 U.S. 574, 582 (1960); *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 570-71 (1960) (BRENNAN, J., concurring)).   The second principle was that "[u]nless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." *Id*. at 649 (citing *Warrior & Gulf*, *supra*, 363 U.S., at 582–83).   The third principle was that, "in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims." *Id*.   The Court further cautioned that:

> "[t]he willingness of parties to enter into agreements that provide for arbitration of specified disputes would be drastically reduced, however, if a labor arbitrator had the power to determine his own jurisdiction.   Were this the applicable rule, an arbitrator would not be constrained to resolve only those disputes that the parties have agreed in advance to settle by arbitration, but, instead, would be empowered "to impose obligations outside the contract limited only by his understanding and conscience."

*Id*. at 651 (internal citations and quotations omitted).   Based on these principles, the Court ruled that because of the express exclusion of management layoffs from the arbitration contract, the issue was one for a court, and not an arbitrator, to decide. *Id*. at 652.

The current case is essentially identical to *AT&T*.   The language of the contract is plain. Boddie and Uber agreed to exempt from arbitration a particular type of controversy: the filing of administrative anti-discrimination complaints that are required for exhaustion of administrative remedies with agencies like the Commission.   There is *no doubt* that the arbitration agreement does not cover administrative filings like Boddie's.   The arbitration agreement, in an obvious ode to *Gilmer* and *Waffle House*, clearly states in two places that this issue is *exempt* from arbitration. (Doc. ID# 1 at 29) ("Nothing in this Arbitration Provision shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in order to fulfill the party's obligation to exhaust administrative remedies before making a claim in arbitration."); (Doc. ID# 1 at 27-28) (exempting "proceedings that must be exhausted under applicable law before pursuing a

claim in a court of law or in any forum other than arbitration"). These exceptions to the agreement are emphasized again: "This Arbitration Provision is intended to require arbitration of every claim or dispute that lawfully can be arbitrated, <u>except for those claims and disputes which by the terms of this Arbitration Provision are expressly excluded from arbitration.</u>" (Doc. ID# 1 at 28) (emphasis added). Uber's argument that its clause stating that the "interpretation" of the arbitration agreement is for an arbitrator to decide is inapposite. The agreement in *AT&T* contained a similar provision (475 U.S. at 644-45), and the Supreme Court still thought it within the province of courts to decide the arbitrability of a particular type of controversy expressly carved out of the agreement.

 None of the cases Uber cites in arguing the applicability of their arbitration agreement involve charges filed with administrative agencies alleging violations of employment discrimination law. For example, *Rent-A-Center* involved an employee filing his own federal lawsuit. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 65 (2010). Furthermore, *Rent-A-Center*'s narrow holding states only that if a party specifically challenges the enforceability of a particular agreement, the district court considers the challenge, but if a party challenges the enforceability of the agreement as a whole, the challenge is for the arbitrator. *Id.* at 67-76. In this instance, the Commission does not challenge the enforceability of the entire agreement, it simply challenges the notion that a charge of discrimination filed before it is subject to the agreement. As such, *Rent-A-Center*, as well as Uber's other case citations,[6] are inapposite.

 Importantly, forcing employees to arbitrate the arbitrability of such charges would

---

[6] *Buckeye Check Cashing* is also not on point for the same reason as *Rent-A-Center. Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) (holding that because the party challenging the arbitration agreement challenged the entire agreement, and not specific provisions of the agreement, the question of the contract's validity was for an arbitrator). Uber's citation of *Paduano v. Express Scripts, Inc.*, 55 F. Supp. 3d 400, 423 (E.D.N.Y. 2014) is also inapplicable. The Commission here challenges not the validity of agreement to arbitrate clause of the contract (as in *Paduano*) but that the parties to this agreement explicitly carved out charges made to administrative agencies such as the Commission. Uber's remaining case citations do not involve filings with the EEOC or a state-level equivalent such as the Commission; therefore, these cases, especially *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 563 (3d Cir. 2023), as amended (May 4, 2023), are unconvincing.

13

contravene both *Gilmer* and *Waffle House* and thwart government law enforcement efforts without the government agencies ever being a party to such arbitration clauses. Therefore, Uber's position that the arbitrability of this matter is up to an arbitrator in Section III.B.2.a of its Memorandum is unsupported in fact, in law, or in sound policy considerations.

2.   *Uber's Arguments That Boddie's Individual Claims Are Within the Scope of the Parties' Agreement to Arbitrate are Misleading to this Court*

In Section III.B.2.c of its Memorandum, Uber leaves out the fact that filings before agencies such as the Commission are excluded from its arbitration agreement. Section III.B.2.c of its Memorandum similarly leaves out additional important facts: 1) that Boddie's "Second Amended Complaint" was an administrative complaint (effectively equivalent of an EEOC Charge) before the Commission that initiated not an adjudicatory process, but a neutral, fact-finding investigation, 2) that the Second Amended Complaint asserted only violations of Pennsylvania law, making the 90-day federal statute of limitations irrelevant, and 3) that the Commission had reopened the administrative investigation around Boddie's charge under 16 Pa. Code § 42.67(a) on January 19, 2023, meaning that the *state* statute of limitations is both irrelevant and has yet to start running in this matter. *See* 43 Pa. Stat. § 962(c)(2) ("A[ private action] under this subsection shall be filed [in court] within two years after the date of notice from the Commission closing the complaint."). For the reasons stated above, the dispute at issue here is not within the scope of the Parties' agreement to arbitrate, as Boddie's Second Amended Complaint was an administrative complaint initiating a neutral, fact-finding government investigation into alleged violations of Pennsylvania law. Therefore, Section III.B.2.c of Uber's Memorandum should be disregarded in its entirety.

E.      **Uber's Allegations that the Class Action Waiver Applies to Boddie's Filing Are Invalid**

As elucidated in the sections above, Boddie's Second Amended Complaint is an administrative complaint equivalent to an EEOC charge filing.  Such administrative charges are not class actions and are therefore not subject to class action waivers. Furthermore, the Commission, which is not a party to the arbitration agreement, is allowed to investigate and enforce systemic allegations contained within Boddie's charge in the public interest. *See Gilmer*, 500 U.S. at 32 ("arbitration agreements will not preclude the EEOC from bringing actions seeking class-wide and equitable relief").

Moreover, the language of Uber's agreement explicitly narrows the class action waiver to "any dispute that is in arbitration and subject to this Arbitration Provision . . . ." (Doc. ID# 1 at 30).  Since this dispute is not subject to the arbitration provision, by the plain language of the contract, Boddie's current dispute is also not subject to the class action waiver.  Furthermore, the express language of the contract states that this is an issue for this Court, and not an arbitrator, to decide. *Id*. ("[D]isputes regarding the enforceability, revocability or validity of the Class Action Waiver may be resolved only by a civil court of competent jurisdiction and not by an arbitrator").  As a result, this Court must reject Uber's argument that the class action waiver applies to Boddie's administrative complaint before the Commission.

F.      **The Commission is Entitled to Dismissal of this Case Because Uber is Not Entitled to an Injunction**

For the reasons cited above, Uber cannot survive a Motion to Dismiss, much less ultimately show that it is entitled to an injunction.  Under Federal Rule of Civil Procedure 65, the Court can only grant a temporary restraining order after balancing of four factors: (1) the likelihood that the movant will prevail at the final hearing; (2) the extent to which the movant would be irreparably

harmed; (3) the extent to which other interested persons would be harmed; and (4) whether the public interest would be served by issuance of a temporary restraining order. *See*, *e.g.*, *Lazzaroni USA Corp. v. Steiner Foods*, No. Civ. 05-4476, 2006 WL 932345, at *2 (D.N.J. Apr. 11, 2006). In adjudicating a motion for a preliminary injunction, the Court must assess the same four factors. *See*, *e.g.*, *Quaker Chem. Corp. v. Varga*, 509 F. Supp. 2d 469, 478 (E.D. Pa. 2007). Uber cannot show irreparable harm when Boddie has only initiated a government investigation into its practices. In support of its arguments supporting irreparable harm, Uber cites only cases where a lawsuit, and not a neutral, fact-finding government investigation, was initiated. Importantly, courts have interpreted as irreparable harm any agreements that attempt to prevent an employee from communicating with a government antidiscrimination agency. *See E.E.O.C. v. Astra U.S.A., Inc.*, 94 F.3d 738, 745 (1st Cir. 1996) (upholding the district court's finding that a settlement agreement that "chilled communications between the settling employees and the EEOC" was irreparable harm *to the EEOC*). As such, it is Uber's Petition that seeks to commit irreparable harm against the Commission, rather than Boddie's charge against Uber. Furthermore, for the reasons stated above, Uber cannot show it is likely to succeed on the merits, and its Petition will cause harm to the Commission and to the public interest within the Commonwealth. Therefore, it cannot show that it is entitled to a preliminary *or* a permanent injunction.

## V. CONCLUSION

For the reasons stated above, the Commission respectfully requests that the Court grant its motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

**[signatures follow]**

November 22, 2023

Respectfully submitted,

/s/Meredith A. Millard_____
Meredith A. Millard
Chief Counsel, PHRC
333 Market St, 8th Floor
Harrisburg, PA 17126
(717) 395-3304
memillard@pa.gov
PA Bar ID: 319465


/s/ John S. Brubaker_____
John S. Brubaker
Assistant Chief Counsel, PHRC
810 N. 8th Street, Suite 501
Philadelphia, PA 19107
(215) 965-2450
jobrubaker@pa.gov
PA Bar ID: 331026

*Attorneys for the Commission*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 22, 2023, I caused a true and correct copy of the foregoing document to be served upon all counsel of record registered with the Court's ECF system, and to Defendant Kevin Boddie by mail in accordance with FRCP 5(b)(2)(C).


/s/John S. Brubaker_____
John S. Brubaker