**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UBER TECHNOLOGIES, INC.,

       Plaintiff,

v.

KEVIN BODDIE,

       Defendant.

Case No. 2:23 Civ. 03780 (JFM)

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION
TO DISMISS PLAINTIFF UBER'S PETITION TO COMPEL ARBITRATION**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   ARGUMENT ...................................................................................................... 2

      A.   *Gilmer* and *Waffle House* Require Dismissal of Uber's Petition.................................. 2

      B.   Mr. Boddie's Administrative Charge Is Pending Before the PHRC, and
           Thus Is Not Subject to Uber's Arbitration Provision.................................................... 3

      C.   Public Policy Favors Dismissal. ................................................................................ 5

      D.   Uber's Delegation Clause Arguments Do Not Alter the Outcome............................... 8

III.  CONCLUSION................................................................................................... 10

# TABLE OF AUTHORITIES

CASES                                                                              PAGE(S)

*Beery v. Quest Diagnostics, Inc.*,
    953 F. Supp. 2d 531 (D.N.J. 2013) ............................................................................ 3, 6

*Coinbase, Inc. v. Suski*,
    No. 23 Civ. 3, -- S.Ct. --, 2024 U.S. LEXIS 2263 (May 23, 2024) ........................................... 9

*Cottrell v. Club Demonstration Servs.*,
    No. 06 Civ. 14763, 2007 U.S. Dist. LEXIS 60634 (E.D. Mich. Aug. 2, 2007) ...................... 4

*Dizon v. J.P. Morgan Chase*,
    660 F. Supp. 3d 268 (D. Del. 2023) ........................................................................... 7

*EEOC v. Shell Oil Co.*,
    466 U.S. 54 (1984) ............................................................................................ 5, 6, 8

*EEOC v. Sterling Jewelers Inc.*,
    801 F.3d 96 (2d Cir. 2015) ......................................................................................... 6

*EEOC v. Sundance Rehab. Corp.*,
    466 F.3d 490 (6th Cir. 2006) ...................................................................................... 6

*EEOC v. Waffle House, Inc.*,
    534 U.S. 279 (2002) ........................................................................................ 1, 3, 5, 8

*Gilbert v. Indeed, Inc.*,
    513 F. Supp. 3d 374 (S.D.N.Y. 2021) .......................................................................... 7

*Gilmer v. Interstate/Johnson Lane Corp.*,
    500 U.S. 20 (1991) ......................................................................................... 1, 2, 7

*Hale v. Brinker Int'l, Inc.*,
    No. 21 Civ. 9978, 2022 U.S. Dist. LEXIS 108488 (N.D. Cal. June 17, 2022) ...................... 10

*Iezzi v. CrossCountry Mortg., LLC*,
    No. 23 Civ. 2827, 2024 U.S. Dist. LEXIS 744 (E.D. Pa. Jan. 3, 2024) ............................. 3, 4

*MacDonald v. CashCall, Inc.*,
    883 F.3d 220 (3d Cir. 2018) ...................................................................................... 9

*MacDonald v. CashCall, Inc.*,
    No. 16 Civ. 2781, 2017 U.S. Dist. LEXIS 64761 (D.N.J. Apr. 28, 2017) ........................... 10

*Singh v. Uber Techs., Inc.*,
    67 F.4th 550 (3d Cir. 2023) ....................................................................................... 9

*Vidal v. Advanced Care Staffing, LLC*,
    No. 23 Civ. 303, 2024 U.S. App. LEXIS 5502 (2d Cir. Mar. 7, 2024) ............................ 9, 10

*Williams v. Tesla, Inc.*,
   No. 18 Civ. 4120, 2018 U.S. Dist. LEXIS 208556 (D.N.J. Dec. 11, 2018) ......................... 3, 8


**STATUTES**

16 Pa. Code § 42.36 ...................................................................................................... 6

16 Pa. Code § 42.41 ...................................................................................................... 7

16 Pa. Code § 42.42 ...................................................................................................... 7

16 Pa. Code § 42.43 ...................................................................................................... 7

16 Pa. Code § 42.67 ...................................................................................................... 4

16 Pa. Code § 42.71 .......................................................................................................7

## I.      INTRODUCTION

The Court should dismiss Uber's Petition to Compel Arbitration ("Petition") and permit Mr. Boddie's administrative charge to proceed before the Pennsylvania Human Relations Commission ("PHRC").  *First*, the United States Supreme Court has held that individuals "subject to an arbitration agreement will still be free to file a charge with the EEOC," *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991) (ADEA context), and that arbitration agreements cannot impede an agency's investigation of discrimination, *see EEOC v. Waffle House, Inc.*, 534 U.S. 279, 296 (2002).  *Second*, there is no dispute that the contract that Uber imposed on Mr. Boddie and relies upon carves out administrative agency actions from arbitration.  *Third*, public policy strongly supports the point that companies should not be permitted to impede the serious and vital work of investigating claims of discrimination, like Uber seeks to do here.

Ultimately, Uber's arguments amount to professed annoyance at the procedural history of the investigation before the PHRC, including the agency's denial of Uber's initial attempt to dismiss or compel to arbitration Mr. Boddie's underlying charge in July 2023.[1]  Having been unsuccessful in the administrative forum, Uber now asks this Court to circumvent the PHRC's decision, but the Court should reject the invitation to do so.  Uber does not (and cannot) dispute that the investigation is still pending, so its qualms about Mr. Boddie's revised charge are simply irrelevant to the narrow legal question facing the Court.  While Mr. Boddie's claims might be resolved in arbitration *after* the PHRC completes its investigation, Uber's arguments about the potential enforceability of its arbitration provision are simply premature at this stage.  Accordingly, the Court should allow PHRC to investigate Mr. Boddie's administrative charge, and reject Uber's attempt to run roughshod over legal precedent and its own agreement.

---

[1]      *See* PHRC Letter (Ex. K), ECF No. 3-3, at 62-63; *see also* Uber Opp. Mot. Intervene, ECF No. 10, at 3.

II.     **ARGUMENT**

      A.     ***Gilmer* and *Waffle House* Require Dismissal of Uber's Petition.**

*Gilmer* and *Waffle House* together establish that arbitration agreements cannot bar individuals from filing administrative charges or administrative agencies from investigating and potentially acting on those charges, as further detailed in Mr. Boddie's opening brief.  *See* ECF No. 30-1 ("Mot."), at 5-7.  Uber cannot sidestep the clear application of this Supreme Court precedent, which transcends the language of any arbitration agreement at issue or issues of arbitrability and is dispositive to the dispute, and so Uber responds with strawman arguments instead.

*First*, in focusing on the *Gilmer* Court's holding that age discrimination claims raised in *private judicial actions* can be compelled to arbitration, Uber mischaracterizes Mr. Boddie's argument with respect to *Gilmer*.  ECF No. 36 ("Opp."), at 4-5.  Mr. Boddie does not contest for purposes of this motion that his discrimination claims – *if subsequently brought in court* – would be disputes potentially subject to the Arbitration Agreement.  Similarly, Mr. Boddie does not argue that the arbitration of claims raised under statutes within the EEOC's purview necessarily frustrates the work of the government agency.  Rather, Mr. Boddie relies on *Gilmer*'s language that complainants can raise claims in an administrative forum before pursing further action (like he did here), *even if* those same claims would otherwise be subject to arbitration if filed in court.  *See* 500 U.S. at 28 ("An individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action.").  Inexplicably, Uber quotes this precise language in arguing against Mr. Boddie's point. Opp. at 4.[2]

---

[2]     Courts in this circuit have repeatedly applied *Gilmer* in the way Mr. Boddie advances, distinguishing between administrative charges (which cannot be compelled to arbitration) and

*Second*, with respect to *Waffle House*, Uber omits that the relief it seeks in this action – compelling the claims in Mr. Boddie's administrative charge to arbitration – would impede an agency's administrative process, and this is the precise outcome that the Supreme Court found impermissible in *Waffle House*.  534 U.S. at 296.  In fact, the EEOC advanced this same concern in its proposed Statement of Interest in *KBR Construction Co. v. Pauley*, No. 16 Civ. 2349 (S.D. W. Va. Apr. 25, 2016), submitted here as Exhibit 1 (ECF No. 30-2), when addressing a similar petition to compel arbitration.  Uber's opposition brief fails to address this reasoned statement, which provides further support for granting Mr. Boddie's motion to dismiss.[3]

> **B.      Mr. Boddie's Administrative Charge Is Pending Before the PHRC, and Thus Is Not Subject to Uber's Arbitration Provision.**

In addition, Uber's arguments are foreclosed by its own contract.  Mr. Boddie filed an administrative charge with PHRC.  His subsequent amendment of that charge does not transform the document into anything other than (or more than) an administrative filing before an agency.  Accordingly, the provision of the agreement that allows "an administrative claim [to be brought] before any agency in order to fulfill the party's obligation to exhaust administrative remedies

---

subsequent judicial proceedings (which can be compelled to arbitration).  *See, e.g.*, *Williams v. Tesla, Inc.*, No. 18 Civ. 4120, 2018 U.S. Dist. LEXIS 208556, at *8 (D.N.J. Dec. 11, 2018) (distinguishing between the "right to file an administrative charge with any government agency, such as the EEOC or its state equivalent," which is a "right[] [that] cannot be waived by agreement," and filing court claims that can be compelled to arbitration); *Beery v. Quest Diagnostics, Inc.*, 953 F. Supp. 2d 531, 546-48 (D.N.J. 2013) (explaining that "EEOC's power to investigate a charge of discrimination is unquestioned, and it cannot be subverted by an agreement to which EEOC is not a party" while compelling dispute filed in court to arbitration); *see also Iezzi v. CrossCountry Mortg., LLC*, No. 23 Civ. 2827, 2024 U.S. Dist. LEXIS 744, at *33-37 (E.D. Pa. Jan. 3, 2024).

[3]      *See* EEOC Statement of Interest (Ex. 1), ECF No. 30-2, at 8-9.

*before* making a claim in arbitration" clearly controls, and Mr. Boddie is entitled to have PHRC investigate his charge before he is compelled to arbitration.[4]

Lacking support in its own contractual language, Uber instead quibbles with how, when, and why Mr. Boddie amended his charge. *See* Opp. at 8. But the language in the contract is clear, and is not conditioned on the timeliness, merit of, or intent behind any administrative claim.[5]

Fundamentally, the PHRC has control over its own administrative processes and decides – as it has already here[6] – whether the amendment is properly before it during the course of its investigation. Accordingly, while Uber's characterizations of the administrative process are irrelevant, they also must fail; the PHRC has determined that Mr. Boddie's amended charge is timely because the charge raises only Pennsylvania claims and because PHRC had accidentally closed Mr. Boddie's case in March 2022, before reopening the matter in January 2023 as it is permitted to do by statute.[7] This later reopening effectively overrides any reasons that PHRC

---

[4]    *See* 2015 Agreement (Ex. C), ECF No. 3-2, at 23 (emphasis added); *accord* 2016 Agreement (Ex. D), ECF No. 3-2, at 46.

[5]    *See* 2015 Agreement l (Ex. C), ECF No. 3-2, at 23; *accord* 2016 Agreement (Ex. D), ECF No. 3-2, at 45. In fact, courts repeatedly apply similar language to distinguish between agency charges and subsequent judicial proceedings. *See, e.g.*, *Cottrell v. Club Demonstration Servs.*, No. 06 Civ. 14763, 2007 U.S. Dist. LEXIS 60634, at *7 (E.D. Mich. Aug. 2, 2007) ("Reading this clause in its entirety, it is clear that any claim an employee makes with a government agency against the employer is excluded from this arbitration agreement, but it is equally clear that an action filed in court for an analogous claim is not excluded."); *see also Iezzi*, 2024 U.S. Dist. LEXIS 744, at *33-37 (after plaintiff exercised "statutory right to file a charge of discrimination with the [EEOC]," compelling arbitration of substantive claims filed in court because arbitration agreement "clearly explains which disputes are excluded from the scope of mandatory arbitration and which disputes are not," where the agreement specified that administrative charges were not subject to arbitration but substantive claims were).

[6]    *See* PHRC Letter (Ex. K), ECF No. 3-3, at 62-63.

[7]    *See* PHRC Intervention Br., ECF No. 7-1, at 2; PHRC Proposed Mot. Dismiss, ECF No. 7-4, at 4; *see also* 16 Pa. Code § 42.67(a) ("Subsequent to the final disposition of a case under this subchapter, the Commission may reopen the case on its own motion, whenever justice so requires.").

provided for its initial closing of Mr. Boddie's matter, which Uber cites to instead.  Opp. at 9.[8]

Similarly, the Court should decline to entertain Uber's speculative musings about the intent of Mr. Boddie's amendment, *id.* at 7-8, which are not supported by the record.  All that is relevant to the Court's analysis is that the claims (even as revised) which Uber's Petition seeks to compel to arbitration are pending before a governmental agency.

Finally, Uber's arguments about whether class actions are permitted in a judicial forum are irrelevant and premature given the investigation's procedural posture.  By its own terms, Uber's agreement only requires that "any dispute that is in *arbitration* [be brought] on an individual basis."[9]  And, in turn, the Supreme Court has explained that an agency's ability to investigate systemic discrimination cannot be impaired.  *See, e.g.*, *EEOC v. Shell Oil Co.*, 466 U.S. 54, 69 (1984) ("[I]t is crucial that the [EEOC's] ability to investigate charges of systemic discrimination not be impaired."); *see also Waffle House*, 534 U.S. at 296 n.11 ("As a greater percentage of the work force becomes subject to arbitration agreements as a condition of employment, . . . the pool of charges from which the EEOC can choose cases that best vindicate the public interest would likely get smaller and become distorted.  We have generally been reluctant to approve rules that may jeopardize the EEOC's ability to investigate and select cases from a broad sample of claims.").

### C.  Public Policy Favors Dismissal.

Public policy also favors dismissal of Uber's Petition for two reasons:  (1) dismissal would be consistent with the Arbitration Agreement's limitation on application to administrative charges

---

[8]    To the extent Uber – in opposing this Motion or in support of its Petition – relies on or disputes the actions taken by PHRC as part of its investigation, this further supports granting PHRC's Motion to Intervene as the PHRC is the proper entity to comment on its own actions and seeks to so comment here, ECF No. 7; *see also* ECF No. 31.

[9]    *See* 2015 Agreement (Ex. C), ECF No. 3-2, at 24 (emphasis added); *accord* 2016 Agreement (Ex. D), ECF No. 3-2, at 47.

(a limitation for which Uber bargained), and (2) dismissal would reject Uber's attempt to "undermine 'the detailed enforcement scheme created by Congress simply to give greater effect to an agreement between private parties that does not even contemplate the EEOC's [or the PHRC's] statutory function.'"[10]  Though Uber argues otherwise, Opp. at 6, these public policy concerns do not fall away simply because the PHRC may have later initiated its own charge.[11]  There are independent public policy reasons that counsel against arbitration of claims raised before administrative agencies.

*First*, the PHRC has authority and the obligation to investigate claims such as Mr. Boddie's.  Mot. at 8-9; *see* 16 Pa. Code § 42.36.  This work is integral to the purpose of PHRC and similar agencies.  *Cf. Shell Oil Co.*, 466 U.S. at 69 ("[I]t is crucial that the [EEOC's] ability to investigate charges of systemic discrimination not be impaired."); *EEOC v. Sundance Rehab. Corp.*, 466 F.3d 490, 499 (6th Cir. 2006) ("There can be little doubt that the filing of charges and participation by employees in EEOC proceedings are instrumental to the EEOC's fulfilling its investigatory and enforcement missions."); *Beery*, 953 F. Supp. 2d at 547 ("The EEOC's power to investigate a charge of discrimination is unquestioned, and it cannot be subverted by an agreement to which EEOC is not a party.").

In fact, agencies perform multiple vital functions *before* a lawsuit or an arbitration begins, and this is precisely the role PHRC is performing now.  *See, e.g.*, *EEOC v. Sterling Jewelers Inc.*, 801 F.3d 96, 100 (2d Cir. 2015) ("The EEOC must: (1) receive a formal charge of discrimination against the employer; (2) provide notice of the charge to the employer; (3) investigate the charge;

---

[10]     EEOC Statement of Interest (Ex. 1), ECF No. 30-2, at 12 (quoting *Waffle House*, 534 U.S. at 296).

[11]     This argument further supports the PHRC's intervention given that Uber provides no record evidence for this point beyond its own briefing.

(4) make and give notice of its determination that there was reasonable cause to believe that a violation of Title VII occurred; and (5) make a good faith effort to conciliate the charges."); *see also* 16 Pa. Code §§ 42.41-42.43 (describing the initiation of investigation and authorizing the use of discovery measures and interviews by agency staff), § 42.71 (referring to conciliation efforts).[12]

*Second*, the PHRC (and similar agencies) can assist individuals who do not have the financial means or technical legal knowledge to investigate or prosecute their claims.[13] Mr. Boddie does not, as Uber suggests, Opp. at 7, imply a right to counsel here, but instead merely recognizes that *pro se* complainants are generally at a disadvantage relative to those assisted by counsel, and receive valuable assistance through the agency process.

*Third*, Uber argues that "public policy favors the enforcement of such private agreements between employees and employers," Opp. at 6 (citing *Dizon v. J.P. Morgan Chase*, 660 F. Supp. 3d 268, 274 (D. Del. 2023)),[14] but to give that language effect here requires allowing the PHRC's

---

[12]    While Uber cites the *Gilmer* Court's comment that "the EEOC's role in combating age discrimination is not dependent on the filing of a charge," Opp. at 4, this does not suggest that an agency's investigative function is not integral to its purpose. To the contrary, one of the main reasons that the Supreme Court found that arbitration did *not* undermine the EEOC's purpose was that individuals could still bring charges of discrimination before the agency. *See Gilmer*, 500 U.S. at 28.

[13]    Uber remarks that Mr. Boddie's concerns regarding *pro se* plaintiffs "do not apply here" because "[Mr.] Boddie has several attorneys now," Opp. at 7-8, but the broader policy concern applies generally, irrespective of Mr. Boddie's specific situation and the scope of counsel's representation.

[14]    Moreover, courts and commentators have questioned whether there is a public good in forcing victims of discrimination into arbitration. *See, e.g.*, *Gilbert v. Indeed, Inc.*, 513 F. Supp. 3d 374, 402 (S.D.N.Y. 2021) ("shar[ing] some of [plaintiff's] concerns about arbitration in the employment context," including that it "can have the effect of hiding from public view the extent of a problem of general societal concern," but compelling arbitration of claims alleged in in court complaint in light of binding precedent); Katherine V.W. Stone & Alexander J.S. Colvin, Econ. Pol'y Inst., The Arbitration Epidemic 18-22 (2015) (comparing trial outcomes in arbitration to those in litigation, noting the higher win rates and damages amounts in the latter, and considering impact on access to justice), https://files.epi.org/2015/arbitration-epidemic.pdf.

7

investigation to proceed unimpeded.[15]  Uber also fails to account for the significant public interest,

repeatedly emphasized by the Supreme Court, in allowing agency investigations to proceed

unimpaired.  *See, e.g.*, *Waffle House*, 534 U.S. at 296 & n.11; *Shell Oil Co.*, 466 U.S. at 69.

Accordingly, the Court should allow PHRC's investigation of Mr. Boddie's pending

administrative charge to go forward.

### D.      Uber's Delegation Clause Arguments Do Not Alter the Outcome.

Uber's argument that this Court should find that an arbitrator must decide the question of

arbitrability and deny Mr. Boddie's Motion as a result fails for several reasons.  *See* Opp. at 3-4.

*First*, Mr. Boddie's Motion can be decided without *any* review of the contract Uber

imposed on Mr. Boddie or its Arbitration Provision, because it is simply a question of Supreme

Court precedent:  can a company interfere with an individual's substantive right to file a charge of

discrimination with an agency and have it investigated by the agency?  Under *Gilmer* and *Waffle*

*House* the answer is no – full stop.  *See Williams*, 2018 U.S. Dist. LEXIS 208556, at *8 (the "right

to file an administrative charge with any government agency, such as the EEOC or its state

equivalent," is a "right[] [that] cannot be waived by agreement").

*Second*, even if the Court were to decide that it must consider the agreement, Uber's

agreement plainly carves out administrative complaints like Mr. Boddie's from the universe of

disputes to which the Arbitration Provision – and by extension its delegation language – applies.[16]

---

[15]      *See, e.g.*, 2015 Agreement (Ex. C), ECF No. 3-2, at 23 ("[N]othing in this Agreement or
Arbitration Provision prevents the investigation by a government agency of any report, claim or
charge otherwise covered by this Arbitration Provision"); *accord* 2016 Agreement (Ex. D), ECF
No. 3-2, at 46.

[16]      *See* 2015 Agreement (Ex. C), ECF No. 3-2, at 22 ("[T]his Arbitration Provision is intended
to apply to the resolution of disputes that otherwise would be resolved *in a court of law* or before
any forum other than arbitration, *with the exception of proceedings that must be exhausted under
applicable law* before pursuing a claim in a court of law or in any forum other than arbitration.");
*id.* at 23 ("*Regardless of any other terms of this Agreement*, nothing prevents you from making a

As a result, Uber cannot invoke the delegation clause to prevent Mr. Boddie from either enforcing his contractual right to proceed before the PHRC, or asking this Court to rule in accordance with Supreme Court precedent.  Likewise, the issues here are not "question[s] of arbitrability," as Uber suggests, Opp. at 3, because Mr. Boddie is not asking the Court to either interpret the Arbitration Provision or determine whether a dispute proceeding in a *judicial* forum is subject to the Arbitration Provision.

*Third*, to the extent Uber nevertheless asserts agency charges are *within* the ambit of the delegation clause, the delegation clause is either ambiguous as to scope or invalid in light of *Gilmer* and *Waffle House* for the reasons Mr. Boddie has already argued.  *See Coinbase, Inc. v. Suski*, No. 23 Civ. 3, -- S.Ct. --, 2024 U.S. LEXIS 2263, at *12-13 (May 23, 2024) ("[W]here a challenge applies 'equally' to the whole contract and to an arbitration or delegation provision, a *court* must address that challenge." (emphasis added)); *Singh v. Uber Techs., Inc.*, 67 F.4th 550, 563 (3d Cir. 2023) (noting party can challenge a delegation clause as itself "not enforceable").[17]

---

report to or filing a claim or charge with the Equal Employment Opportunity Commission, . . . . *Nothing in this Arbitration Provision* shall be deemed to preclude . . . a party from bringing an administrative claim before any agency . . . ." (emphasis added)).  The language of the 2016 agreement is substantially identical.  *See* 2016 Agreement (Ex. D), ECF No. 3-2 at 44-45 ("[T]his Arbitration Provision is intended to apply to the resolution of disputes that otherwise would be resolved *in a court of law* or before any forum other than arbitration, *with the exception of proceedings that must be exhausted under applicable law* before pursuing a claim in a court of law or in any forum other than arbitration."); *id.* at 46 ("*[N]othing in this Arbitration Provision* prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission, . . . . *Nothing in this Arbitration Provision* shall be deemed to preclude . . . a party from bringing an administrative claim before any agency . . . .").

[17]    *See also MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226-27 (3d Cir. 2018) ("In specifically challenging a delegation clause, a party may rely on the same arguments that it employs to contest the enforceability of other arbitration agreement provisions."); *Vidal v. Advanced Care Staffing, LLC*, No. 23 Civ. 303, 2024 U.S. App. LEXIS 5502, at *4 (2d Cir. Mar. 7, 2024) (plaintiff "challenge[d] both the delegation clause and the arbitration provision more broadly").

Delegating the question of whether administrative charges are subject to arbitration to an arbitrator, and thus forcing an individual out of the administrative forum and into the arbitral forum (where they may incur significant costs), contravenes Supreme Court precedent holding that the right to proceed before an administrative forum is unwaivable and cannot be impeded.[18] *Cf. Vidal*, 2024 U.S. App. LEXIS 5502, at *4 (affirming preliminary injunction against arbitration because plaintiff "raised sufficiently serious questions about whether the delegation clause interferes with his ability to effectively vindicate his statutory rights under federal law and is thus unenforceable"); *MacDonald v. CashCall, Inc.*, No. 16 Civ. 2781, 2017 U.S. Dist. LEXIS 64761, at *9 (D.N.J. Apr. 28, 2017) ("The delegation clause is unenforceable for virtually the same reason as the underlying arbitration agreement—the Loan Agreement's wholesale waiver of the application of federal and state law makes it invalid."), *aff'd*, 883 F.3d 220.

## III.    CONCLUSION

For these reasons and the reasons in Mr. Boddie's opening brief, the Court should dismiss Uber's Petition.

---

[18]     In addition to the time needlessly incurred, this process would likely also impose significant costs on Mr. Boddie because Uber's arbitration agreement suggests that individuals "will be required to split the cost of any arbitration with the Company." 2015 Agreement (Ex. C), ECF No. 3-2, at 20.  Courts have declined to enforce arbitration agreements because of similar cost-splitting provisions. *E.g.*, *Hale v. Brinker Int'l, Inc.*, No. 21 Civ. 9978, 2022 U.S. Dist. LEXIS 108488, at *3-4 (N.D. Cal. June 17, 2022) ("If employees think they must split the costs of arbitration, which can easily run in the thousands of dollars, they may (and often will) simply decline to bring claims in the first place.").

Date:   May 31, 2024                    */s/ Pooja Shethji*
        Washington, D.C.                **OUTTEN & GOLDEN LLP**
                                        Ossai Miazad*
                                        Pooja Shethji*
                                        1225 New York Avenue NW
                                        Suite 1200B
                                        Washington, D.C. 20005
                                        Email: om@outtengolden.com
                                        Email: pshethji@outtengolden.com
                                        Telephone: (202) 847-4400
                                        Facsimile: (202) 847-4410

                                        **OUTTEN & GOLDEN LLP**
                                        Christopher M. McNerney*
                                        Jarron D. McAllister*
                                        685 Third Avenue, 25th Floor
                                        New York, NY 10017
                                        Email: cmcnerney@outtengolden.com
                                        Email: jmcallister@outtengolden.com
                                        Telephone: (212) 245-1000
                                        Facsimile: (646) 509-2060

                                        **JUSTICE AT WORK**
                                        Chelsea Edwards
                                        990 Spring Garden Street, Suite 300
                                        Philadelphia, PA 19123
                                        Email: cedwards@justiceatworklegalaid.org
                                        Phone: (215) 733-0878
                                        Facsimile: (215) 733-0876

                                        *Admitted *pro hac vice*

                                        *Counsel for Defendant Boddie*

11

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 31, 2024, I caused a true and correct copy of the foregoing

document to be served upon all counsel of record via ECF.


*/s/ Pooja Shethji*
Pooja Shethji