**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UBER TECHNOLOGIES, INC., | : | |
| *Plaintiff* | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| KEVIN BODDIE, | : | |
| *Defendant* | : | No. 23-3780 |

**MEMORANDUM**

MURPHY, J.                                                                  August 23, 2024

The narrow issue resolved here is whether an employer can use an arbitration agreement with its employee to stop an investigation by the Pennsylvania Human Relations Commission. No, it turns out. But under the surface, this case is about the PHRC's administrative maneuvering to re-open an old investigation into Uber, the employer, brought by the employee, Mr. Boddie, and seemingly avoid the statute of limitations. Uber tried something creative and filed this suit to try to enforce its arbitration agreement with Mr. Boddie, but prevailing legal authority forbids that particular tactic.

In 2018, Uber discovered that one of its drivers, defendant Mr. Boddie, had a sixteen-year-old criminal conviction and revoked his permission to work as an Uber driver. Mr. Boddie then filed a pro se charge of discrimination based on age and sex against Uber with the Pennsylvania Human Relations Commission (PHRC). In March 2022, the PHRC found no probable cause and closed the case. Then, in January 2023, the PHRC mysteriously re-opened the case. Two months later, Mr. Boddie filed an amended charge under the same case number, averring that Uber's background check policy had a disparate impact on Black and Hispanic men. Uber protested the re-opening of Mr. Boddie's case, but the PHRC rejected Uber's

1

arguments and proceeded to investigate.  However, when the deadline arrived for Uber to

provide information to the PHRC, Uber commenced this lawsuit against Mr. Boddie.

Uber seeks an injunction compelling Mr. Boddie to withdraw his charge of racial

discrimination from the PHRC and arbitrate his claims.  The PHRC moves to intervene as a

defendant and to dismiss Uber's complaint.  Mr. Boddie also moves to dismiss.  For the reasons

that follow, we grant the PHRC's motion to intervene and grant the motions to dismiss.

### I.  <u>Background</u>

Uber connects drivers with riders in need of local rides.  DI 1 ¶¶ 8–9.  To facilitate this

process, Uber uses two different applications: drivers download Uber's Driver Application

(Driver App), and riders download Uber's Rider Application.  *Id.* ¶ 9.  In December 2016,

Defendant Kevin Boddie downloaded the Driver App.  *Id.* ¶ 10.  Two months later, in order to

continue using the Driver App, Mr. Boddie entered into an agreement with an Uber subsidiary.

*See id.*  Uber is an intended third-party beneficiary of that agreement, which contains an

arbitration agreement.  *Id.* ¶¶ 11, 13.  The arbitration agreement is attached to the complaint and

occupies about eight, single-spaced pages.  *See id.* at 25–32 (ECF).  At least three excerpts

warrant reproduction:

> Except as it otherwise provides, this [arbitration agreement] is
> intended to apply to the resolution of disputes that otherwise would
> be resolved in a court of law or before any forum other than
> arbitration, with the exception of proceedings that must be
> exhausted under applicable law before pursuing a claim in a court
> of law or in any forum other than arbitration.

*Id.* at 27–28 (ECF).

> Except as it otherwise provides, this [arbitration agreement] also
> applies to all disputes between you and . . . Uber, . . . including but
> not limited to any disputes arising out of or related to this
> Agreement and disputes arising out of or related to your
> relationship with . . . Uber, including the formation or termination

2

> of the relationship.  Except as it otherwise provides, this
> [arbitration agreement] also applies to disputes regarding any city,
> county, state or federal wage-hour law, trade secrets, unfair
> competition, compensation, breaks and rest periods, expense
> reimbursement, termination, harassment, retaliation,
> discrimination, and claims arising under the . . . Civil Rights Act of
> 1964, . . . Age Discrimination in Employment Act, . . . and state
> statutes, if any, addressing the same or similar subject matters[.]

*Id.* at 28 (ECF).

> [N]othing in this [arbitration agreement] prevents you from making
> a report to or filing a claim or charge with the Equal Employment
> Opportunity Commission, . . . and nothing in this [arbitration
> agreement] prevents the investigation by a government agency of
> any report, claim or charge otherwise covered by this [arbitration
> agreement].  Nothing in this [arbitration agreement] shall be
> deemed to preclude or excuse a party from bringing an
> administrative claim before any agency in order to fulfill the
> party's obligation to exhaust administrative remedies before
> making a claim in arbitration.

*Id.* at 29.

In June 2018, Mr. Boddie "became ineligible to use the Uber Driver App."[1]  *Id.* ¶ 19.  In

July 2018, Mr. Boddie submitted an Employment Discrimination Questionnaire to the PHRC,

alleging that Uber discriminated against him on the basis of age and sex.  *Id.* ¶ 20.  From the

questionnaire,[2] it appears that Uber allegedly revoked Mr. Boddie's permission to continue using

---

[1] According to Mr. Boddie, Uber terminated him "after a retroactive background check
uncovered a stale conviction."  DI 30-1 at 7 (ECF).

[2] This questionnaire is not attached to Uber's complaint, which Uber styled a "Petition to
Compel Arbitration," but the questionnaire is attached to a so-called "Memorandum of Law in
Support of Petition to Compel Arbitration," which Uber filed the day after it commenced suit.
*See* DI 1, 3, 3-3.  Generally, "a district court ruling on a motion to dismiss may not consider
matters extraneous to the pleadings."  *In re Burlington Coat Factory Securities Litigation*, 114
F.3d 1410, 1426 (3d Cir. 1997) (citing *Angelastro v. Prudential-Bache Securities, Inc.*, 764 F.2d
939, 944 (1985)).  "[T]he primary problem raised by looking to documents outside the
complaint" is "lack of notice to the plaintiff," which "is dissipated 'where the plaintiff has actual
notice and has relied upon these documents in framing the complaint.'"  *Id.* (cleaned up)
(quoting *Watterson v. Page*, 987 F.2d 1, 3–4 (1st Cir. 1993)).  That Uber attached this

3

the Driver App because a background check disclosed his 2002 criminal conviction, though Mr.

Boddie had understood Uber only to require that its drivers have no criminal convictions in the

preceding seven years.  *See* DI 3-3 at 5–6 (averring that Mr. Boddie was "fired because of old

background (2002)" and that Mr. Boddie was discriminated against "as a person who have not

convicted a felon[y] pass 7 years all of sudden fired from driving [be]cause of a pass background

in '2002'").  Two years later, on July 22, 2020, the PHRC served Uber with Mr. Boddie's

questionnaire (now styled as a complaint), which was dual-filed with the EEOC.  *See* DI 1 ¶ 21.

Almost two years after that, in March 2022, the PHRC found that there was no probable cause to

support a finding that Mr. Boddie had been discriminated against on the basis of age or sex.  *See*

*id.* ¶ 23.  On July 7, 2022, the EEOC adopted the PHRC's finding of no probable cause and

issued a right-to-sue letter, giving Mr. Boddie 90 days to file suit.  *Id.* ¶¶ 25–26.  Mr. Boddie did

not file suit against Uber or demand arbitration.  DI 1 ¶ 27.

    In March 2023, Mr. Boddie submitted an amended complaint[3] to the PHRC, which

agreed to consider it over Uber's objections.[4]  *See id.* ¶¶ 28, 31–32.  Mr. Boddie's amended

---

questionnaire to a memorandum filed the day after the complaint confirms that Uber had actual
notice of the questionnaire — indeed, the Petition to Compel Arbitration specifically describes
the contents of the questionnaire.  *See* DI 1 ¶ 22; *cf. In re Burlington*, 114 F.3d at 1426
(explaining document "explicitly relied upon in the complaint" may be considered at motion to
dismiss stage (quoting *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1220 (1st Cir. 1996))).
In any case, although the specific allegations contained in the questionnaire provide helpful
context, they are not strictly necessary to our analysis of the motions to dismiss.

    [3] The amended complaint was labeled a "Second Amended Complaint."  *See* DI 3-3 at 33
(ECF).  However, there is no first amended complaint either in the record or discussed in the
briefing.  We therefore take the document Mr. Boddie entitled "Second Amended Complaint" to
be his second complaint in this matter, not his third, and will refer to this document as the
amended complaint.

    [4] The PHRC reopened Mr. Boddie's case in January 2023.  DI 43 at 60:2–3.  During oral
argument, counsel for the PHRC explained that, per typical agency practice, Mr. Boddie's charge
was dismissed after the investigation of a non-lawyer.  *See* DI 43 at 7:11–25.  However, an
attorney later reviewed Mr. Boddie's case and determined that it was "closed improperly."  *Id.* at

complaint[5] brings four class-based claims under a disparate impact theory for both the termination of and failure to hire Black and Hispanic males due to Uber's overly inclusive criminal background check procedures.  *See* DI 3-3 at 33–40 (ECF).  On May 30, 2023, Uber filed its answer to the amended complaint, which argued against the propriety of re-opening Mr. Boddie's charge on several grounds.  *See* DI 1 ¶ 31.  In July, the PHRC rejected Uber's arguments.  *See id.* ¶ 32.  The PHRC requested information from Uber as part of its investigation into Mr. Boddie's amended complaint.  *See id.* ¶ 33.  Uber then filed the present lawsuit.

## II.  <u>Procedural History</u>

On September 27, 2023, Uber commenced the present action against Mr. Boddie by filing a "Petition to Compel Arbitration."[6]  DI 1.  The petition asks the Court for a permanent injunction compelling Mr. Boddie to arbitrate the claims in his amended complaint before the PHRC.  *Id.* ¶¶ 35–39.  The following day, Uber filed a document that appears to be a memorandum in support of its petition, as well as a motion for both a temporary restraining order and a preliminary injunction.  *See* DI 3 (document entitled "Memorandum of Law in Support of

---

7:16–8:1.  The PHRC has not explained the particular impropriety this attorney found, but it did represent that the attorney's review "was a reconsideration on the merits."  *Id.* at 8:8–9.  The results of this reconsideration were documented in "an opinion of legal counsel," which the PHRC has not disclosed.  *Id.* at 9:7–15.  Oral argument gave us the distinct impression that there is more to the story than what we have been told, but as this opinion explains, we are not in a position to find out what happened and whether it was proper.

[5] The amended complaint is attached to Uber's so-called "Memorandum of Law in Support of Petition to Compel Arbitration" but not to the "Petition to Compel Arbitration" itself.  *See* DI 1, 3-3 at 33.  Nonetheless, Uber explicitly relies on the amended complaint in its Petition to Compel Arbitration.  *See* DI 1 ¶¶ 29–30 (characterizing allegations of amended complaint).  Thus, the Court may consider the amended complaint at the motion to dismiss stage.  *See In re Burlington Coat Factory*, 114 F.3d at 1426.

[6] This action was originally on the docket of the late Honorable Gene E.K. Pratter.

Petition to Compel Arbitration, Order to Show Cause, Motion for Temporary Restraining Order and Preliminary Injunction").

On November 22, 2023, the PHRC filed a motion to intervene as a defendant, which Uber opposes.  DI 7; DI 10.  The PHRC attached a proposed Motion to Dismiss to its Motion to Intervene.  DI 7-3; DI 7-4 DI 7-5.

On December 4, 2023, Judge Pratter issued an order directing Uber to show cause that it had served Mr. Boddie with the summons and complaint in this matter.  DI 8.  After granting an extension, Uber purported to serve Mr. Boddie by leaving the summons and complaint with an unnamed employee in the leasing office of Mr. Boddie's apartment building.  DI 8; DI 13; DI 14. Upon Uber's request, the Clerk of Court entered default against Mr. Boddie on February 28, 2024.  DI 16, DI 17.  However, Mr. Boddie eventually obtained counsel and filed a Motion to Dismiss Uber's Petition to Compel Arbitration on May 1.[7]  DI 30.  Mr. Boddie also filed a Memorandum of Law in Support of the PHRC's Motion to Intervene.  DI 31.  We held oral argument on all pending motions on June 12, 2024.  DI 42.

### III.    PHRC's Motion to Intervene

We will start by resolving the PHRC's motion to intervene.  The PHRC argues first that it is entitled to intervene as a defendant as a matter of right and, alternatively, that it is entitled to permissive intervention.  DI 7-1 at 7–14 (ECF).  Because we conclude that the PHRC is entitled to intervene as a matter of right, we need not reach the issue of permissive intervention.  Uber argues that the PHRC does not have the right to intervene because it lacks a sufficient interest in

---

[7]  Oral argument on the motion to intervene was originally set for March 14, 2024.  DI 15.  However, on March 5, Mr. Boddie sent the court an e-mail requesting assistance obtaining a lawyer, and Judge Pratter stayed the action for 30 days to provide Mr. Boddie with the opportunity to obtain counsel.  DI 18.

this action. DI 10 at 3–9 (ECF). Mr. Boddie disagrees, arguing that the PHRC has "an

independent and unique interest" in this action because it will affect the PHRC's ability to

investigate Mr. Boddie's administrative charge and others like it. *See* DI 31 at 1–2 (ECF). We

agree with the PHRC and Mr. Boddie and find that the PHRC has a sufficient interest in this

action to warrant intervention as a matter of right.

### A.    Legal Standard

The Federal Rules of Civil Procedure provide that, "[o]n timely motion," the Court:

> must permit anyone to intervene who . . . claims an interest relating
> to the property or transaction that is the subject of the action, and is
> so situated that disposing of the action may as a practical matter
> impair or impede the movant's ability to protect its interest, unless
> existing parties adequately represent that interest."

Fed. R. Civ. P. 24(a). The Third Circuit has identified four requirements for intervention as a

matter of right: "first, a timely application for leave to intervene; second, a sufficient interest in

the litigation; third, a threat that the interest will be impaired or affected, as a practical matter, by

the disposition of the action; and fourth, inadequate representation of the prospective

intervenor's interest by existing parties to the litigation." *Kleissler v. U.S. Forest Service*, 157

F.3d 964, 969 (3d Cir. 1998) (citations omitted). "[W]hether the proposed intervenor's interest is

direct or remote" is the "polestar for evaluating a claim for intervention." *Id.* at 972.

### B.    Timeliness

The PHRC timely filed its motion to intervene. The motion was filed within two months

of when Uber commenced this action and before Mr. Boddie filed a responsive pleading. Under

the applicable "totality of the circumstances" standard, that is timely. *U.S. v. Alcan Aluminum,

Inc.*, 25 F.3d 1174, 1181 (3d Cir. 1994) (citation omitted). The motion has caused no discernible

delay that might prejudice the parties. *Cf. Wallach v. Eaton Corp.*, 837 F.3d 356, 371 (3d Cir.

2016) (instructing the Court to consider "the prejudice that delay may cause the parties" (quoting *In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005)); *In re Iraq Telecom Ltd.*, No. 19-175, 2023 WL 2402873, at *2 (E.D. Pa. Mar. 8, 2023) ("[S]ix months is not a significant delay, and there is no conceivable prejudice to any party here by any delay that may have occurred."). Uber also does not appear to contest the timeliness of the PHRC's motion.  *See generally* DI 10.

### C.  Sufficient Interest in the Litigation

An interest is "sufficient" when it is "specific to [the intervenor], is capable of definition, and will be directly affected in a substantially concrete fashion by the relief sought." *Transource Pennsylvania, LLC v. Dutrieuille*, No. 21-2567, 2022 WL 2235466 (3d Cir. June 22, 2022) (quoting *Kleissler*, 157 F.3d at 972).  The PHRC describes its interest here as its "authority to initiate, receive, investigate, and pass upon complaints charging unlawful discrimination under the PHRA," or Pennsylvania Human Relations Act.  DI 7-1 at 10 (ECF).  Indeed, the PHRA empowers the PHRC "[t]o initiate, receive, investigate and pass upon complaints charging unlawful discriminatory practices."  43 Pa. Stat. and Cons. Stat. Ann. § 957(f).  Thus, the Court finds that the PHRC's interest in responding to charges of unlawful discrimination brought under the PHRA is both specific to the PHRC and defined by statute.

The PHRC's statutorily defined interest also will be "directly affected in a substantially concrete fashion" by an injunction compelling Mr. Boddie to arbitrate his claims.  *Transource*, 2022 WL 2235466, at *2 (quoting *Kleissler*, 157 F.3d at 972).  Uber argues that the PHRC lacks a sufficiently concrete interest in this litigation because Mr. Boddie's amended complaint brings claims that are untimely, waived, outside the PHRC's jurisdiction, and subject to arbitration.  *See* DI 10 at 3–9 (ECF).  In reply, the PHRC argues that Uber's assertions regarding the scope of the PHRC's jurisdiction simply underscore how the interests of the PHRC — including the

determination of its own jurisdiction — will be directly impacted by the outcome of this litigation.  DI 11 at 1–2 (ECF).  We agree with the PHRC.

The outcome of this action will directly impact the PHRC's legally defined interest in investigating Mr. Boddie's amended complaint.[8]  If Mr. Boddie must take his charge of discrimination to arbitration, then the PHRC investigation stops.  Uber argues that the PHRC has no interest in investigating Mr. Boddie's charge because it should never have re-opened Mr. Boddie's case in the first place.  But that is a circular argument,[9] and this is not the proper forum for Uber to request judicial review of the PHRC's legal determinations regarding the handling of its own cases.  As counsel for the PHRC explained, the PHRC's rejection of Uber's arguments is "appealable through the Commonwealth Court system . . . where all of [the PHRC's] cases are reviewed."  DI 43 at 12:9–19.  That is not to denigrate Uber's criticism of what happened at the PHRC.  We merely find that the PHRC's legal interest in investigating Mr. Boddie's charge of discrimination — an interest of debatable scope — would be directly affected by an order directing Mr. Boddie to withdraw his complaint and arbitrate his claims.  Accordingly, the Court finds that the PHRC's interest would be "directly affected in a substantially concrete fashion by the relief sought."  *Transource*, 2022 WL 2235466, at *2 (quoting *Kleissler*, 157 F.3d at 972).

---

[8] The timing of this action suggests that its objective was to delay or stop the PHRC's investigation.  Notably, Uber did not seek to compel arbitration until the PHRC requested information, and the deadline for providing that information had arrived.  *See* DI 7-1 at 6 (ECF).

[9] *Compare* DI 3-3 at 54–57 (arguing to the PHRC that Mr. Boddie's case should not be re-opened because: Mr. Boddie's claims in the amended complaint are time-barred, the re-opening of Mr. Boddie's case was procedurally improper, Mr. Boddie's claims lie outside the PHRC's jurisdiction, and Mr. Boddie's claims are subject to arbitration), *with* DI 10 at 2–8 (arguing to the Court that the PHRC lacks a sufficient interest in this litigation because: Mr. Boddie's claims in the amended complaint are time-barred, the re-opening of Mr. Boddie's case was procedurally improper, Mr. Boddie's claims lie outside the PHRC's jurisdiction, and Mr. Boddie's claims are subject to arbitration).

**D.  Impairment of Interest as a Practical Matter**

As a practical matter, the disposition of this action could impair the PHRC's interest in investigating Mr. Boddie's complaint.  Uber argues that, because the PHRC has filed a separate charge of discrimination against Uber raising similar allegations,[10] the PHRC lacks a practical interest in the outcome of this matter.  DI 10 at 9 (ECF).  According to Uber, the PHRC can investigate Uber's background-check policy under the auspices of its separate charge regardless of whether the Court requires Mr. Boddie to arbitrate his charge.  *See id.*  However, as a practical matter, a PHRC investigation limited to the PHRC's separate charge against Uber would be much more limited in scope than a PHRC investigation that includes Mr. Boddie's charge, and this limitation practically impairs the PHRC's interest in investigating Mr. Boddie's charge of discrimination.

Requiring Mr. Boddie to arbitrate his charge would circumscribe the scope of the PHRC's investigation into Uber's background-check policy.  Mr. Boddie's charge was first brought in 2018, and the PHRC's separate charge against Uber was brought in 2023.  DI 43 at 14:10–12.  Due to the operative statute of limitations, the withdrawal of Mr. Boddie's charge from the PHRC would prevent the PHRC from addressing any alleged discrimination that occurred in the five intervening years.  *See id.* at 14:5–15:14, 31:8–12.  Uber avers, credibly, that the PHRC is circumventing the statute of limitations by improperly re-opening Mr. Boddie's original charge to expand its investigation to cover five additional years.  *See* DI 10 at 5–6 (ECF); DI 43 at 31:13–33:10.  But we need not resolve this statute-of-limitations dispute because the question is whether, as a practical matter, the PHRC's interest in initiating, receiving, investigating, and passing upon charges of discrimination will be impaired by an order

---

[10] During the oral argument, counsel for the PHRC confirmed that the PHRC has initiated its own charge of discrimination against Uber.  DI 43 at 12:20–13:7.

compelling Mr. Boddie to arbitrate his complaint charging Uber with unlawful discriminatory practices.  43 Pa. Stat. and Cons. Stat. Ann. § 957(f).  The answer to this question is yes: compelling Mr. Boddie to arbitrate will shrink the scope of the PHRC's investigation.

Three further considerations underscore this conclusion.  First, compelling Mr. Boddie to arbitrate his charge of discrimination would impair the PHRC's ability to remedy the particular discrimination allegedly suffered by Mr. Boddie himself.  *See* DI 43 at 13:11–14:4.  Second, as counsel for the PHRC explained during oral argument, the PHRC's interest in investigating Uber's background-check policy has already been impaired by the present action: neither Mr. Boddie's charge nor the PHRC's separate charge "have moved forward" pending the outcome of the present action.  *Id.* at 13:8–10.  And third, compelling arbitration in the present action could impair the PHRC's interest in investigating future charges of discrimination filed by individuals who are subject to an arbitration clause.  *See* DI 7-1 at 11–13 (ECF).  Thus, the Court concludes that the disposition of the present action practically threatens the PHRC's interest in investigating charges of discrimination, including the charge of Mr. Boddie.

### E.  Adequate Representation of Interests

The burden on the PHRC to demonstrate that Mr. Boddie does not adequately represent its interests is "minimal."  *Benjamin ex rel. Yock v. Dept. of Pub. Welfare of Pennsylvania*, 701 F.3d 938, 958 (3d Cir. 2012) (quoting *Mountain Top Condominium Ass'n v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 368 (3d Cir. 1995)).  The PHRC may meet this minimal burden based on "any of the following three grounds: (1) that although the applicant's interests are similar to those of a party, they diverge sufficiently that the existing party cannot devote proper attention to the applicant's interests; (2) that there is collusion between the representative party and the opposing party; or (3) that the representative party is not diligently prosecuting the

suit." *Brody By and Through Sugzdinis v. Spang*, 957 F.2d 1108, 1123 (3d Cir. 1992).  The Court finds that, although the PHRC's interests are similar to those of Mr. Boddie, they are sufficiently divergent that Mr. Boddie cannot devote proper attention to the PHRC's interests. Uber does not appear to contest this conclusion.  *See generally* DI 10.

Both the PHRC and Mr. Boddie seek to dismiss Uber's petition to compel arbitration. *See* DI 7-3; DI 30.  But the PHRC argues that its interests diverge from Mr. Boddie's in three respects.  First, the PHRC's "duty is to protect the public interest in this matter, which includes, but is certainly not limited to just [Mr.] Boddie."  DI 7-1 at 12 (ECF).  Because of the PHRC's broader interest, the PHRC states that, if Mr. Boddie ultimately decided it was in his best interest to arbitrate his charge, the PHRC would still seek to preserve its power to investigate the discrimination Mr. Boddie alleged Uber engaged in against similarly situated individuals.  *See id.* Second, the PHRC points out that Pennsylvania statutory law contemplates that only the PHRC or the Pennsylvania Attorney General will represent the PHRC's interests in court, rendering Mr. Boddie's representation of the PHRC's interests inappropriate as a matter of law.  *See* 71 Pa. Cons. Stat. Ann. § 732-403.  Third, the PHRC argues that it has a distinctive interest in preserving its ability to investigate *future* charges of discrimination brought by individuals who are subject to arbitration agreements.  *See* DI 7-1 at 12–13.  As an individual litigant, Mr. Boddie lacks this institutional interest in preserving the PHRC's investigative authority moving forward. *See id.*  And Mr. Boddie himself has stated that he does not adequately represent the PHRC's interests.  *See* DI 31 at 2 (ECF) ("While Mr. Boddie's counsel is able to articulate Mr. Boddie's arguments in opposition to Uber's Petition to Compel Arbitration, only the [PHRC] can provide the agency's institutional interest in opposition to Uber's Petition.").  Thus, noting that the

PHRC's burden here is "minimal," *Benjamin*, 701 F.3d at 958, the Court concludes that Mr. Boddie does not adequately represent the PHRC's interests.

The PHRC meets all four requirements for intervention as a matter of right.  The Court grants the PHRC's motion to intervene as a defendant in this action.

### IV.   Motions to Dismiss

Mr. Boddie and the PHRC both moved to dismiss Mr. Boddie's complaint.[11]  *See* DI 7-3; DI 30.  They argue that Uber's effort to compel arbitration of Mr. Boddie's administrative charge is both (a) precluded by *Gilmer v. Interstate/Johnson Lane Corporation*[12] and *EEOC v. Waffle House*,[13] and (b) contrary to the plain language of the arbitration agreement.  *See* DI 7-4 at 9–12 (ECF); DI 30-1 at 8–11, 14–15 (ECF).  In response,[14] Uber construes *Gilmer* as supporting its effort to compel arbitration and distinguishes *Waffle House*.  *See* DI 36 at 4–6.  We disagree with Uber's view.  *Gilmer* precludes Uber's creative effort to compel arbitration here.  Both the plain language of the arbitration agreement and *Waffle House* confirm this conclusion.

---

[11] The PHRC attached its motion to dismiss to its motion to intervene.  *See* DI 7-3, 7-4, 7-5.  Intervenors must attach "a pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).  Although a Rule 12(b)(6) motion is not among the "pleadings" set out in Rule 7(a), "courts have liberally construed the 'pleading' requirement of Rule 24(c) to embrace other filings as long as the documents filed clearly notify the original parties of the position the applicant intervenor will assert."  *New Century Bank v. Open Solutions, Inc.*, No. 10-6537, 2011 WL 1666926 (E.D. Pa. May 2, 2011).  The PHRC's motion to dismiss notifies Uber and Mr. Boddie that the PHRC asserts Uber fails to state a claim.  *See* DI 7-3 at 1 (ECF).  Thus, the PHRC's Motion to Dismiss satisfies the requirements of Rule 24(c).

[12] 500 U.S. 20 (1991).

[13] 534 U.S. 279 (2002).

[14] Uber opposed Mr. Boddie's motion to dismiss, DI 36, but Uber did not file briefing in opposition to the PHRC's motion to dismiss, which was attached to the PHRC's motion to intervene, *see* DI 7.  However, because the substance of both motions to dismiss is the same, counsel for Uber agreed during the oral argument that no further briefing is necessary, and we can address both motions here.  *See* DI 43 at 45:11–18.

13

### A.  Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotation marks omitted).  A claim has facial plausibility when the facts pleaded permit a court to make the reasonable inference that the defendant is liable for the alleged misconduct.  *Id.*  We take well-pleaded facts to be true, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them.  *Connelly v. Lane Construction Corp.*, 809 F.3d 780, 789–90 (3d Cir. 2016).  But "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  The Court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  Next, the Court turns to the "well-pleaded factual allegations," "assume[s] their veracity," and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.*  This analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (citation omitted).

### B.  Discussion

Uber's petition to compel arbitration brings one count against Mr. Boddie for a permanent injunction pursuant to the Federal Arbitration Act (FAA).  DI 1 ¶¶37–39.  The FAA states: "[a] party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition" the court "for an order directing that such arbitration proceed in the manner provided for in such agreement."  9 U.S.C. § 4.  The Supreme Court has read this provision of the FAA to "manifest a 'liberal federal policy favoring arbitration agreements.'" *Waffle House*, 534 U.S. at 289 (quoting *Gilmer*, 500 U.S. at 25).

As an initial matter, Uber alleges several conclusions of law in its petition that are not entitled to the presumption of truth.  *See Iqbal*, 556 U.S. at 679.  First, Uber alleges that the claims contained in Mr. Boddie's amended complaint to the PHRC are covered by the arbitration and class-action waiver[15] provisions of his contract.  *See* DI 1 ¶¶ 3, 29–30.  Second, Uber alleges that the arbitration agreement here "requires that any and all disputes between Mr. Boddie and Uber . . . be decided exclusively through mandatory binding arbitration."  *Id.* ¶ 36.  We will not accept these allegations as true because they are disputed legal conclusions.[16]  *See* DI 30-1 at 14–16; DI 7-4 at 9–10, 14–19.

We next determine whether Uber's well-pled allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.  *Gilmer* supplies a clear answer: Uber is not entitled to an injunction here.  The main issue in *Gilmer* was whether an employee could be compelled to arbitrate claims brought under the Age Discrimination in Employment Act (ADEA).  *Gilmer*, 500 U.S. at 23.  Robert Gilmer, a banker who signed an arbitration agreement when he registered as a securities representative, was fired at age 62.  *Id.*  Mr. Gilmer filed a charge of age discrimination with the EEOC before filing suit in federal district court.  *Id.* at 23–24.  The Supreme Court found that Mr. Gilmer's *judicial* suit was subject to compulsory

---

[15] Uber asks us to "enforce" the so-called "class action waiver" contained in Mr. Boddie's arbitration agreement.  DI 3 at 17–18 (ECF).  However, this provision is part of the arbitration agreement itself and only applies to disputes that are "in arbitration and subject to this [arbitration agreement]."  DI 1 at 30 (ECF).  Because the applicability of this putative waiver is coextensive with the applicability of the arbitration agreement itself, Uber's request that the waiver be enforced is subsumed by its request for arbitration.  We decline to consider this part of the arbitration agreement separately.

[16] The FAA instructs that the court "shall hear the parties" and compel arbitration only "upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue."  9 U.S.C. § 4.  We are not aware of any challenge to the formation of Mr. Boddie's contract, but his alleged "failure to comply therewith" by filing an amended complaint with the PHRC is one of the central and disputed issues animating this action.

arbitration.  *See id.* at 28, 35.  In so finding, the Supreme Court explained, "[a]n individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action."  *Id.* at 28.  The Supreme Court thus recognized a distinction between administrative charges of employment discrimination and private judicial actions: the latter are subject to compulsory arbitration, but the former are not.

The Supreme Court's distinction between charges of employment discrimination and private judicial actions is highly instructive here.  Unlike Mr. Gilmer, Mr. Boddie has not filed a discrimination suit in federal district court.  Mr. Boddie merely filed a charge of discrimination with the PHRC — Pennsylvania's analogue to the EEOC.[17]  Uber unpersuasively argues that *Gilmer* supports compulsory arbitration here simply because the Supreme Court compelled Mr. Gilmer to arbitrate his private judicial action.  *See* DI 36 at 4–5.  However, this argument elides the Supreme Court's distinction between charges of employment discrimination and private judicial actions.  And it follows straightforwardly from this distinction that Mr. Boddie's charge of employment discrimination is not subject to compulsory arbitration.

At the oral argument, Uber's counsel for the first time attempted to distinguish the EEOC process protected by *Gilmer* from the PHRC process at issue here.  *See* DI 43 at 48:11–49:7.  Counsel argued that, because the PHRC can hold adversarial proceedings, whereas the EEOC must act as an "independent prosecutor" in court, *Gilmer*'s protection of EEOC charges from compulsory arbitration does not apply to PHRC charges.  *See id.*  This argument is unconvincing at least because it is speculative.  Although Uber's counsel stated without evidence that the

---

[17] The PHRC is the state-level equivalent of the EEOC.  *See* DI 7-4 at 5, 8, 17 n.6, 18, 19; DI 30-1 at 15–16; DI 43 at 57:1–6.  Accordingly, Uber's Petition describes the PHRC and EEOC processes as unfolding in parallel.  *See* DI 1 ¶¶ 1, 21, 25.

PHRC's "end game here is an adversarial proceeding," *id.* at 49:5–6, counsel for the PHRC explained that many PHRC investigations do not lead to adversarial proceedings, *id.* at 66:10–24. And, in any case, no adversarial proceeding has commenced here.

Uber's requested relief would prevent the PHRC from even *investigating* Mr. Boddie's amended complaint.  But the Supreme Court has explained that *Gilmer*'s language protecting administrative charges "addressed the role of an agency . . . *reviewing a discrimination charge* to determine whether to initiate judicial proceedings." *Preston v. Ferrer*, 552 U.S. 346, 359 (2008) (emphasis added).  At this early stage, the PHRC seeks to look into Mr. Boddie's charge and determine how to proceed, which is precisely what *Gilmer* protects.[18]  Notably, even the plain language of the arbitration agreement protects the PHRC's investigation: "nothing in this [arbitration agreement] prevents the investigation by a government agency of any report, claim or charge otherwise covered by this [arbitration agreement]."  DI 1 at 29 (ECF).  Even absent that contractual language, though, the Court would still find that *Gilmer*'s protection of administrative charges is not vitiated simply because the PHRC's investigation could lead to an adversarial proceeding that is administrative in nature.[19]

---

[18] Counsel for the PHRC explained that an adversarial proceeding brought by the PHRC could be filed in either an administrative or a judicial forum.  *See* DI 43 at 66:16–21.  In either case, the PHRC would file a complaint and serve the defendant.  *Id.*  Although *Gilmer* technically considered an EEOC investigation potentially culminating in "judicial proceedings," *Preston v. Ferrer*, 552 U.S. 346, 359 (2008), the PHRC's ability to review a discrimination charge and determine what type of proceedings to initiate remains protected under the logic of *Gilmer*.

[19] Curiously, counsel for Uber stated that the difference between an adversarial hearing before a state administrative agency and a judicial action prosecuted by the EEOC "was exactly the issue in *Blossom*[*game*], which we think should control here."  DI 43 at 65:13–16.  *Blossomgame* refers to a Report & Recommendation from the Eastern District of New York in which the Magistrate Judge recommended granting Uber's request for compulsory arbitration of employment discrimination claims that were pending before the New York State Division of Human Rights.  *See Uber Techs., Inc. v. Blossomgame*, No. 20-CV-04842, 2021 WL 8317115, at

Uber argues in passing that *Preston v. Ferrer* demonstrates Mr. Boddie's amended complaint is subject to compulsory arbitration despite being filed with an administrative agency. *See* DI 3 at 15–16 (ECF).  This argument is unpersuasive because the arbitration agreement in *Preston* is distinguishable from the arbitration agreement at issue here.  In *Preston*, Alex Ferrer, a former trial court judge who appeared as "Judge Alex" on television, entered into a contract with Arnold Preston, an entertainment lawyer, for legal services.  *Preston*, 552 U.S. at 350.  That contract contained an agreement to arbitrate "any dispute relating to the terms of the contract or the breach, validity, or legality thereof in accordance with the rules of the American Arbitration Association." *Id.* (cleaned up).  When Mr. Preston demanded arbitration over his fees, Mr. Ferrer petitioned the California Labor Commissioner for a declaration that the contract was void because Mr. Preston lacked a state-required license.  *Id.*  Even though California law lodged primary jurisdiction over this dispute with the Labor Commissioner, the Supreme Court found that the FAA superseded California law, and the dispute was subject to compulsory arbitration. *See id.* at 349–52, 359.

*Preston* is minimally instructive because it involved a contract for legal services with a global arbitration agreement, not an employment contract with a limited arbitration agreement like Mr. Boddie's.  Consistent with *Gilmer*'s protection of administrative charges brought by employees, Mr. Boddie's arbitration agreement expressly protects Mr. Boddie's ability to bring an administrative charge of discrimination: "[n]othing in this [arbitration agreement] shall be deemed to preclude or excuse a party from bringing an administrative claim before any agency in

---

*1 (E.D.N.Y. Oct. 29, 2021).  Mr. Blossomgame represented himself pro se and primarily argued that he was not subject to compulsory arbitration because he had opted out of the arbitration agreement.  *See id.* at *4-5.  The Magistrate Judge found that Mr. Blossomgame had not opted out and recommended compulsory arbitration without mentioning *Gilmer*.  *See id.* at *5–6.  Thus, *Blossomgame* is minimally instructive and does not "control here."

order to fulfill the party's obligation to exhaust administrative remedies before making a claim in

arbitration."  DI 1 at 29 (ECF); *see also id.* at 27–28 (excepting from compulsory arbitration

"proceedings that must be exhausted under applicable law before pursuing a claim in a court of

law or in any forum other than arbitration").  To exhaust a claim of discrimination under the

PHRA — the type of claim contained in Mr. Boddie's amended complaint — the claim must

first be exhausted by filing with the PHRC.[20]  *See Clay v. Advanced Computer Applications,*

*Inc.*, 559 A.2d 917, 919–20 (Pa. 1989); *Richards v. Foulke Associates, Inc.*, 151 F. Supp. 2d 610,

614–15 (E.D. Pa. 2001).  And, as the Supreme Court has explained, "it is the language of the

contract that defines the scope of disputes subject to arbitration."  *Waffle House*, 534 U.S. at 289

(citing *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 57 (1995)).  Consistent with

the law, the language of Mr. Boddie's contract unambiguously limited the scope of disputes

subject to compulsory arbitration to *exclude* administrative charges necessary for exhaustion

purposes.

---

[20] This is one way you can tell that Uber's efforts to compel arbitration here run upstream against legal authority.  If Mr. Boddie had filed a claim in arbitration for the counts contained in his amended complaint, Uber could argue that he failed to exhaust those claims before the PHRC; when Mr. Boddie attempted to exhaust those claims before the PHRC, Uber sought compulsory arbitration.  But Mr. Boddie must exhaust the claims from his amended complaint before he can arbitrate them, and both *Gilmer* and the plain language of his arbitration agreement protect his ability to do so.  *See Gilmer*, 500 U.S. at 28; DI 1 at 27–29 (ECF).  Uber failed to convince the PHRC that it could not consider Mr. Boddie's bid to exhaust these claims.  *See* DI 3-3 at 54–57, 62–63.  Although Uber maintains that the amended complaint is improperly before the PHRC, the fact remains that the amended complaint *is* before the PHRC.  It simply does not follow that Uber is entitled to compulsory arbitration of a protected charge because Uber contends, against the conclusions of the PHRC, that the charge was improperly brought.  There is, to illustrate the point, no clause in the arbitration agreement (nor legal authority) protecting administrative charges brought for exhaustion purposes *except for those which the employer contends are improper, regardless of the agency's position*.  Uber's legal disputes with the PHRC are appealable to Pennsylvania's courts, not to federal district court by means of a petition to compel arbitration.

By contrast, the arbitration agreement in *Preston* flatly covered "any dispute relating to the terms of the contract or the breach, validity, or legality thereof." *Preston*, 552 U.S. at 350 (cleaned up).  Considering this global arbitration agreement, the Supreme Court held, "when parties agree to arbitrate *all questions arising under a contract*, state laws lodging primary jurisdiction in another forum, whether judicial or administrative, are superseded by the FAA." *Id.* at 349–50 (emphasis added).  But Mr. Boddie's arbitration agreement did not refer all questions arising under the contract to an arbitrator.  It expressly contemplated that some claims would be referred to administrative agencies. *See, e.g.*, DI 1 at 29 (ECF) ("[N]othing in this [arbitration agreement] prevents you from making a report to or filing a claim or charge with the Equal Employment Opportunity Commission, U.S. Department of Labor, Securities Exchange Commission, National Labor Relations Board, or Office of Federal Contract Compliance Programs[.]").  And "we do not override the clear intent of the parties, or reach a result inconsistent with the plain text of the contract, simply because the policy favoring arbitration is implicated." *Waffle House*, 534 U.S. at 294.  The plain text of the contract in *Preston* does not align with the plain text of Mr. Boddie's contract.

Finally, *Preston* presented a different question than the present case.  The Supreme Court emphasized that Mr. Preston's petition to compel arbitration presented "precisely and only a question concerning the forum in which the parties' dispute will be heard." *Preston*, 552 U.S. at 359.  Because exhaustion was not at issue in *Preston*, the dispute centered around whether the Labor Commissioner or an arbitrator would determine the validity of the contract.  However, because exhaustion is a prerequisite to arbitrating Mr. Boddie's claims, the relevant question here is *whether*, not *where*, Mr. Boddie's claims will be heard.  Thus, *Preston* provides very little guidance about how to resolve the present dispute.

Finally, *Waffle House* confirms that Uber fails to state a claim.  In *Waffle House*, Eric Baker signed an agreement with Waffle House stating that "any dispute or claim" related to his employment would be "settled by binding arbitration."  *Waffle House*, 534 U.S. at 282.  After Mr. Baker was terminated, he filed a charge of discrimination with the EEOC, but he did not initiate either judicial or arbitral proceedings thereafter.  *See id.* at 283.  The EEOC filed an enforcement action against Waffle House in federal district court seeking victim-specific relief for Mr. Baker, though Mr. Baker was not a party to that litigation.  *Id.* at 282–83.  Waffle House moved to compel the EEOC to arbitrate, but the Supreme Court held that the EEOC could not be compelled to arbitrate based on Mr. Baker's contract with Waffle House.  *Id.* at 284–85, 297–98.

*Waffle House* helps to demonstrate that Uber's petition to compel arbitration is premature.  Of course, unlike Waffle House, which sought to compel the EEOC (not Mr. Baker) to arbitrate, Uber seeks to compel Mr. Boddie (not the PHRC) to arbitrate.  Nonetheless, as a practical matter, if Mr. Boddie is compelled to arbitrate his amended complaint, then the PHRC's investigation will never get off the ground.  Waffle House unsuccessfully sought to compel the EEOC to arbitrate an "enforcement action" brought by the agency "[a]fter an investigation and an unsuccessful attempt to conciliate."  *Id.* at 283.  At the enforcement stage, the Supreme Court found, based on the plain language of Title VII, that "the EEOC has the authority to pursue victim-specific relief[.]"  *See id.* at 295.  Similarly, at the investigation stage, the PHRA explicitly empowers the PHRC "[t]o initiate, receive, *investigate* and pass upon complaints charging unlawful discriminatory practices."  43 Pa. Stat. and Cons. Stat. Ann. § 957(f) (emphasis added).  Thus, by protecting non-party agencies' ability to respond to charges of discrimination, *Waffle House* suggests that Uber may not block the PHRC's investigation by filing a petition to compel arbitration.

In sum, contrary to Supreme Court precedent and the plain language of its contract with Mr. Boddie, Uber asks the Court to compel Mr. Boddie to arbitrate an administrative charge of discrimination currently pending before the PHRC.  Because Mr. Boddie has both a legal and apparent contractual right to file an administrative charge of discrimination, Uber fails to state a claim.[21]  The Court grants the motions to dismiss.

## V.      Conclusion

The Court grants the PHRC's Motion to Intervene and grants Mr. Boddie's and the PHRC's motions to dismiss.  An appropriate order follows.

---

[21] Because Uber fails to state a claim for compulsory arbitration, it follows that Uber is not entitled to a preliminary injunction.  The Court can grant a preliminary injunction after balancing four factors: (1) whether there is a reasonable probability that the movant will prevail on the merits; (2) whether the movant will be irreparably harmed absent an injunction; (3) whether the defendants will suffer even greater harm from the issuance of an injunction; and (4) whether preliminary injunctive relief is in the public interest. *Quaker Chemical Corp. v. Varga*, 509 F. Supp. 2d 469, 477–78 (E.D. Pa. 2007) (quoting *Allegheny Energy, Inc. v. DQE, Inc.*, 171 F.3d 153, 158 (3d Cir. 1999)).  The Third Circuit Court of Appeals has explained that "a movant for preliminary equitable relief must meet the threshold for the first two 'most critical' factors: it must demonstrate that it can win on the merits . . . and that it is more likely than not to suffer irreparable harm in the absence of preliminary relief." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017).  Here, Uber has failed to state a claim upon which relief can be granted. Thus, Uber cannot demonstrate that it can win on the merits.